CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY *v.* HOUGHLAND,
ADMINISTRATOR.

[No. 6,363. Filed June 30, 1908. Rehearing denied June 4, 1909.]

1. PLEADING. — *Complaint.* — *Railroads.* — *Crossings.* — *Proximate Cause.*—A complaint alleging that defendant railroad company "negligently failed to blow the whistle eighty rods from said [highway] crossing, and negligently failed to ring the bell continuously as it approached said crossing, and negligently ran said locomotive and one car attached thereto at a high and dangerous rate of speed, to wit, sixty miles an hour,. * * * against said buggy in which the plaintiff's decedent was riding, * * * and negligently killed the plaintiff's decedent," is sufficient, and shows that the proximate cause of the death was the dangerous speed coupled with the failure to give the statutory signals. p. 75.

2. TRIAL.— *Verdict.*— *Interrogatories.*— *Conflict.*— The answers to the interrogatories control the general verdict only where they are in irreconcilable conflict therewith. p. 76.

3. TRIAL.— *Instructions.*— *Imputed Negligence.*—*Interrogatories.*— *Curing Error.*—The refusal to give certain instructions concerning imputed negligence is not harmful, where the court has fully instructed on such point; and favorable answers to interrogatories on such points would render harmless any error in refusing such instructions. p. 76.

4. RAILROADS.— *Highway Crossing Signals.*— *Failure.*— *Excuses.*— Where a traveler on a public highway near a railroad crossing heard the whistle of the locomotive at a crossing one-half mile away, such signal "filled the purpose of the law in requiring a

whistle to be sounded within eighty or one hundred rods of a highway crossing," which the traveler was about to cross.    p. 81.

5.  NEGLIGENCE.—*When Question of Law.*—Negligence is ordinarily a mixed question of law and fact, but becomes a question of law where but one inference can be drawn from the undisputed facts. p. 81.

6.  RAILROADS.— *Highway Crossings.*— *Contributory Negligence.*— Where a father was riding in a buggy on the highway with his son who was driving, at a distance of 230 feet from a railroad crossing, and they heard the whistle of the engine at a highway crossing one-half mile away, and drove toward the crossing and upon arriving at a point thirty feet from the crossing they slowed the horse to a walk but did not stop, the fog being so dense that the train was not visible over 100 feet, and the train failed to sound the whistle or to ring the bell, the train running at sixty miles per hour, and killing the father on the crossing, such father was guilty of contributory negligence as a matter of law. *Pittsburgh, etc., R. Co.* v. *Lynch,* 43 Ind. App. 177, distinguished.    pp. 81, 82.

7.  RAILROADS.— *Highway Crossings.*— *Contributory Negligence.*—A traveler upon a highway knowing that a train is approaching a half-mile away is guilty of contributory negligence as a matter of law if he attempts to cross the track, without stopping to listen, and he has no right to rely upon the sounding of the whistle or the ringing of the bell for his crossing, though the fog is so dense that he cannot see the approaching train over 100 feet. p. 84.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Action by Charles H. Houghland, as administrator of the estate of Jeremiah Matthews, deceased.    From a judgment for plaintiff, defendant appeals.    *Reversed.*

*A. B. Everhard, C. E. Cowgill, L. J. Hackney* and *T. L. Stitt,* for appellant.

*Wymond J. Beckett* and *Innis & Morgan,* for appellee.

RABB, C. J.—This action was brought to recover damages for the death of appellee's decedent, alleged to have been caused by the negligence of the appellant.    Appellant's demurrer to the complaint was overruled and an exception reserved.    An answer of general denial was filed, a jury trial had, resulting in a general verdict in favor of appellee, assessing damages at $5,000.    Answers to interrogatories submit-

ted to the jury were returned with the general verdict. Appellant's motions for a judgment in its favor upon the answers to the interrogatories and for a new trial were severally ·overruled, and a judgment rendered upon the general verdict in favor of appellee.

The errors assigned and urged here for reversal, are the rulings of the court below on appellant's demurrer to the complaint, and on its motions for judgment in its favor on the interrogatories and for a new trial.

It is insisted that the complaint is insufficient, because it fails to show that the alleged negligent acts charged against the appellant were the proximate cause of the injury complained of. The negligence charged in the complaint was as follows: ''Said defendant negligently ran one of its locomotives against said vehicle in which this plaintiff's decedent was riding at the time, and negligently crushed and broke said vehicle, and negligently threw this plaintiff's decedent out of said vehicle, and negligently thereby inflicted mortal wounds. * * * And plaintiff says that defendant, as it approached said crossing, negligently failed to blow the whistle when eighty rods from said crossing, and negligently failed to ring the bell continuously as it approached said crossing, and negligently ran said locomotive and one car attached thereto at a high and dangerous rate of speed, to wit, sixty miles an hour, while approaching and running onto said crossing, and negligently failed to give any signal or warning, or to take any precaution whatever to protect people upon said crossing, or to guard against accidents at said crossing, but negligently ran said car against said buggy in which the plaintiff's decedent was riding, as aforesaid, and negligently killed the plaintiff's decedent, as aforesaid.''

While this complaint could not be commended as a model pleading, and is certainly redundant in charges of negligence where they do not properly belong, yet we think it sufficiently avers that the act of the appellant in running its locomotive

at the rate of sixty miles an hour across a much-frequented public highway, without giving any signal or warning of its approach to the highway, is a charge of negligence, and that it sufficiently appears that it was the act of the appellant in thus running its train at such a high rate of speed over the public highway, without such warning, that resulted in the injury and death of appellee's decedent. It is averred clearly that it was this train that was thus run that struck the appellee's intestate at the crossing and killed him. We think the complaint sufficient to withstand a demurrer.

Nor can we agree with appellant's contention that error intervened in the overruling of appellant's motion for a judgment in its favor upon the answers to the interrogatories notwithstanding the general verdict. The answers to the interrogatories are in conflict with one another, but are not in irreconcilable conflict with the general verdict.

Appellant's motion for a new trial calls in question the sufficiency of the evidence to sustain the verdict, certain instructions given and refused, the action of the court in admitting certain evidence, and error in the assessment of damages.

Instructions twenty-two and twenty-six, asked for by the appellant, withdrew from the consideration of the jury the question as to whether Clayton Matthews, who was driving the horse at the time of the accident, was acting in that matter as the agent of the deceased, and required the jury to impute the negligence of said Clayton to the deceased. No reversible error intervened in refusing these instructions. The court correctly instructed the jury on the subject of imputed negligence. The jury found in favor of appellant in the answers to special interrogatories on the question of fact, and no harm could have resulted to the appellant from the refusal to give these instructions asked for.

The court refused to instruct the jury that if there were obstacles preventing the deceased from seeing the approaching train in time to avoid the collision, and he heard the whistle when he was from two hundred and thirty to two hundred and fifty feet from the track, then it was the duty of the deceased to stop and listen for the approach of the train when within fifty feet of the track, before undertaking to cross the same; and if by so doing he could have heard the train and avoided the accident, then he would be guilty of negligence in undertaking to cross without so stopping to listen.

The refusal of the court to give this instruction presents the same question that is presented by the reason assigned in appellant's motion for a new trial—that the evidence is insufficient to support the verdict. There is evidence tending to show that, on account of the dense fog prevailing at the time, the decedent was unable to see the train that struck him. There is no contradiction whatever about the fact that he did not stop and listen for the approach of the train at any time after he left the hardware store, which was 250 feet from the crossing, and that, within one minute of the time of the collision, and just as he was leaving the hardware store, he heard the whistle of the engine that struck him. It is equally clear, from the uncontradicted evidence of all the witnesses who testified on the subject, that the decedent could have distinctly heard the sound made by the approaching train had he stopped and listened for it at any point within fifty feet of the track.

The evidence is uncontradicted that, at the time the accident occurred, the decedent was fifty-five years of age, of ordinarily good senses of sight and hearing; that he resided in the country a few miles east of the town of Milroy, which was a small village on appellant's road; that on the morning of the day the accident occurred he and his son Clayton, who was nineteen years of age and in full possession of his

senses of sight and hearing, came to the town of Milroy for
the purpose of getting a joint of stovepipe to fit a sheet-iron
stove belonging to decedent, and to be used by him; that
they were riding in an old, one-seated top buggy, with the
top down, drawn by a poor, slow-gaited, gentle horse; that
they had with them in the buggy the sheet-iron stove for
which the pipe was designed; that the son was driving; that
they got the pipe at the hardware store of one Maley, situ-
ated on Main street in said town, about two hundred
thirty feet west from the crossing; that this street was level
and sixty feet wide; that the grade of appellant's road where
it crossed said street was on a level with the street; that on
the north side of Main street, and distant about one hundred
feet from the center of the highway, was a woodshed that ob-
structed the view of appellant's road to the north from the
center of Main street, until a person approaching the rail-
road crossing along the center of said street from the west
reached a point thirty-six feet from the track; that from a
point thirty-six feet west of appellant's track, in the center
of Main street, there were no obstacles in the way that would
prevent a traveler upon the highway, of ordinarily good eye-
sight, from seeing, for a distance of 600 feet, an en-
gine and caboose coming down appellant's track from
the north; that a person approaching the Main street cross-
ing from the west, could, when at a point within a distance of
ten or twenty feet back from the crossing, see a train ap-
proaching from the north on appellant's road, at any
point within a thousand feet north of the crossing, so far as
any natural obstacles obstructed the vision; that about one-
half mile north of the Main street crossing another public
highway crossed appellant's road, which is known as the
"Bartlett crossing."

The evidence does disclose that there were a few trees and
a switch signal, and some telegraph poles within the range
of vision, but at the time the accident occurred, which was
about 8:10 o'clock a. m. on January 20, 1905, it clearly ap-

pears that these obstructions to the range of vision would in nowise prevent a traveler upon the highway approaching the railroad from seeing an engine and caboose coming from the north on appellant's road.

The evidence discloses that a dense fog obscured the decedent's view of the approaching engine and caboose, and the theory of the appellee's case is that, by reason of this dense fog and the intervening obstacles, the appellee's intestate was prevented from seeing the engine and caboose that struck his vehicle, until his horse was upon the track. The evidence is clear that but for the fog the decedent could plainly have seen the engine that struck him, had he looked, in time to avoid the collision.

Decedent had completed his errand in town, and was proceeding home, going east from Maley's store, where he had bought the stovepipe, toward the crossing, as the engine and caboose approached from the north. The whistle was sounded when the engine was north of the Main street crossing, somewhere north of Bartlett's crossing. The evidence justified the finding that the bell upon the engine was not rung as it approached the crossing. At the time the whistle was sounded the decedent and his son were just leaving the hardware store, about two hundred thirty feet from the crossing. They heard the sound of the whistle. Clayton Matthews, the decedent's son, testified that he heard the sound of the whistle, and knew the train was approaching, but thought he could get across before the train arrived. He did not know where the engine was when the whistle was sounded. For aught he knew, the whistle might have been sounded at the whistling post. It apprised him and his father of the approach of the engine. He testified that the horse was driven at a slow jog of a trot from the store to a point within about thirty feet of the crossing, when the horse was slowed down to a walk, and that he walked from there until on the crossing; that when the horse was on the crossing he saw the engine approaching a very short distance away, and that this

was the first he saw of the engine; that he struck the horse in endeavoring to get over the crossing, but did not quite get out of the way of the engine, which struck the rear wheels of the buggy. He claims that he and his father kept looking to the north for the approaching train which they knew was coming, and listened for it as they approached the crossing, but neither heard nor saw it until, as before stated, the horse was upon the crossing.

A great number of witnesses were examined in behalf of the appellee, to prove the rate of speed at which the train was going, that the whistle was not sounded at the whistling post, and that the bell was not being rung. All of these witnesses testified that the noise made by the train could be heard distinctly for a long distance before it reached the crossing, by one standing still. Some witnesses testified to hearing the noise made by the running of the train when they were not listening for the same, and when they were indoors engaged at their work. Others, who were out of doors and standing where there was no noise of a moving vehicle to interrupt their hearing, testified that the noise made by the running of the train could be heard from one-half mile to a mile. It is made perfectly clear that had the decedent and his son stopped their vehicle and listened for the train at any point between the store and the railroad track they could have heard distinctly the train approaching, and would have been able to judge of its dangerous proximity to the crossing before they attempted to cross the same.

The inference is inevitable, that if the decedent and his son failed to hear the approaching train it was because of the noise made by their moving horse and vehicle, and not for any other reason. There is no evidence that any other vehicle was passing upon the street, except the buggy in which the witness Mercer was riding, and which passed appellee's decedent on the road, and reached the depot before the accident occurred. There is no evidence that there were any distracting sounds produced except those which

would naturally be made by the movement of the vehicle in which decedent and his son were riding and by the horse which they were driving.

The evidence justified the finding that the whistle on the engine was not sounded at the whistling post for the Main street crossing, but that it was sounded for the crossing of the highway, one-half mile north of that point. There was a conflict in the evidence upon this subject, but wheresoever it was sounded, it was heard by the decedent and his son, and warned them of the approach of the engine and caboose, and, so far as the whistling was concerned, it filled the purpose of the law in requiring a whistle to be sounded within eighty or one hundred rods of a highway crossing.

Ordinarily, negligence is a mixed question of law and fact. It has often been held to be a question of law. It is a question of law when the facts are undisputed, and where the inferences to be drawn from them lead to but one result. *Lake Shore, etc., R. Co.* v. *Frantz* (1889), 127 Pa. St. 297, 18 Atl. 22, 4 L. R. A. 389; *Baltimore, etc., R. Co.* v. *Welborn* (1891), 127 Ind. 142; *Cincinnati, etc., R. Co.* v. *Butler* (1885), 103 Ind. 31; *Cincinnati, etc., R. Co.* v. *Howard* (1890), 124 Ind. 280, 8 L. R. A. 593, 19 Am. St. 96.

We think, under the facts presented by the evidence in this case, that the question of the contributory negligence of the decedent in approaching the railroad was one of law, and not one of fact to be submitted to the jury. If a state of facts could exist where an obligation rested upon one approaching a railroad crossing, and driving a vehicle, to stop and listen for the approach of a train, they are shown to have existed in this case.

Here, under the evidence, and upon the appellee's contention, the conditions were such that the decedent could not see an approaching train, running at a high rate of speed along the railroad, in time to avoid a collision with it at the

crossing.  From the time a rapidly approaching train would come within the range of his vision, while in the act of crossing said track, it would be upon him, with fatal effect, before he, with his slowly-moving horse, could get off the track.  He knew that a train was approaching, and in close proximity. Its exact whereabouts and its rate of speed he did not know, and the undisputed testimony given by his own witnesses shows that had he taken the precaution to stop his vehicle and carefully listen for the train he would have heard its approach and avoided the accident.  This he did not do, and his failure in this respect was, under the circumstances, clearly an act of negligence proximately contributing to the accident resulting in his death.

Other questions are presented by the record, but we do not deem it necessary to pass upon them.

The judgment of the court below is reversed, with instructions to grant a new trial.

Myers, P. J., Comstock, Watson and Hadley, JJ., concur. Roby, J., absent.


## On Petition for Rehearing.

HADLEY, C. J.—The court did, as pointed out by appellee in his brief filed in support of this petition, give instructions which are unexceptional from the viewpoint of the appellant.

6.

A careful review of the case does not result in a different conclusion.  The law, as it relates to the standard of care required from a traveler along a street, who crosses a railroad track, is well settled and has often been declared.  The duty to look and listen is one which, in the exercise of ordinary care, cannot be evaded.  There is no absolute duty on the part of the traveler to stop, but he must exercise ordinary care commensurate with the known danger.

This case is distinguished from the case of *Pittsburgh, etc., R. Co.* v. *Lynch* (1909), 43 Ind. App. 177, and other

cases cited by appellee on his petition for rehearing, in that, in this case it appears that decedent's son, who was riding with him, heard the whistle of the approaching train, and it must be presumed from the evidence that appellee's decedent also knew that a train was approaching. He did not know where it was or at what rate of speed it was running. Under ordinary conditions he could see up the track for at least a quarter of a mile when he was within thirty feet of the west rail of the track. It is plain that it was on account of the fog that he could not see more than one hundred feet on the morning of the accident, but this fog was as apparent to him as to the persons running the train. With his knowledge that a train was approaching, and his knowledge that on account of a fog he could not see for a greater distance than one hundred feet, it was his duty to inform himself of his safety, and not to drive blindly into a place of known danger.

As is said in *Evansville, etc., R. Co.* v. *Clements* (1904), 32 Ind. App. 659: "The railroad track on the level with the highway is itself a warning of danger. Obstructions to the view admonish the traveler of the peril to which he is exposed. Caution must always be exercised commensurate with the known danger. The failure of the engineer to sound the whistle or ring the bell does not relieve the person approaching the highway from the use of care and ordinary prudence for his safety. What is ordinary care in one case would not be ordinary care in another under a different state of facts. 'In proportion as the danger increases must the vigilance of the person attempting to cross increase.' *Oleson* v. *Lake Shore, etc., R. Co.* [1896], 143 Ind. 405, 32 L. R. A. 149, and cases cited; *Towers* v. *Lake Erie, etc., R. Co.* [1898], 18 Ind. App. 684, and cases cited." To the same effect is the case of *Baltimore, etc., R. Co.* v. *Musgrave* (1900), 24 Ind. App. 295.

Here the degree of care is different from that of a traveler approaching a crossing with no knowledge of an approach-

84     APPELLATE COURT OF INDIANA,

Huntington, etc., Lime Co. *v.* Powhatan Coal Co.—44 Ind. App. 84.

ing train, in which case he is entitled to rely, to some extent at least, upon the statutory signals to warn him of the train's approach. *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589; *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524.

In the case last cited the court say: "It is true, as a legal proposition, that the mere omission of signals, or the like, cannot alone, ordinarily, be accepted by a person about to pass over a crossing as an assurance that there is no danger in crossing. * * * A person approaching a railroad crossing has the right to assume that the company will obey the law, by giving the required signals of an approaching train; and if such person, under the circumstances, after having exercised due care, and employed his senses of seeing and hearing, to ascertain if a train is approaching, and thereby avoid danger, can neither see nor hear an advancing or moving train, he is justified in presuming that he can pass over the crossing in safety."

But a traveler cannot indulge in this presumption where, from any source, he has actual knowledge of an approaching train; and in this particular case, whether it was the noise of the vehicle in which he was riding, or some other intervening agency, that prevented decedent from hearing the rumble of the approaching train, is immaterial.

With this modification of the original opinion, the petition for rehearing is overruled.