NEW YORK CENTRAL RAILWAY COMPANY v. POWELL.

[No. 27,822.   Filed March 29, 1943.   Rehearing denied April 15, 1943.]

322

324

*Parr, Parr & Parr,* of Lebanon, for appellant.

*Scifres & Hollingsworth* and *Rogers & Smith,* all of Lebanon, for appellee.

FANSLER, J.—The appellee's decedent was killed when the gasoline truck which he was driving was struck by appellant's train at a grade crossing in the town of Jamestown in Boone County. This is an action for damages alleged to have been caused by the negligent conduct of appellant in the operation of its train. There was judgment for the plaintiff.

Error is assigned upon the overruling of appellant's motion for judgment on the answers to interrogatories and on the overruling of its motion for a new trial.

The complaint, which is in one paragraph, alleges that the appellant's railroad intersects a public highway in the town over which a large volume of vehicular traffic passes; that the crossing is in the residential section; that the view of the crossing is obstructed because of an elevation in the ground east of the high-

way, and by buildings and trees and shrubs, and by a line of poles and wires maintained by the appellant to such a degree that the view of drivers of motor vehicles is obscured until vehicles are upon the crossing; that by reason of these obstructions the crossing is hazardous and perilous. It is alleged that the death of appellee's decedent was caused by the careless, reckless, and negligent acts of the appellant in the operation of its train "in the following particulars, to-wit:

"First. That at said time and place, as the defendant, by its employees, drove and operated said freight train towards said crossing, said defendant carelessly and negligently failed to give any warning of the approach of said train towards said crossing as required by law in that the whistle on the engine pulling said train was not sounded distinctly three times when such engine was not less than eighty nor more than one hundred rods from such crossing; that the bell attached to such engine was not continuously rung from the time of sounding such whistle until such engine passed said crossing; that by the careless and negligent failure of the defendant to sound said whistle and ring said bell, as required by law, the said Allie M. Powell had no warning of the approach of said train and the negligent failure of the defendant to give such warning signals brought about the death of the said Allie M. Powell.

"Second. That on the 10th day of October, 1936, and at the time and place of the accident described in this complaint, the defendant, by its employees, drove and operated its freight train from an east to west direction over its said railroad through said town of Jamestown and upon and against said motor truck and said decedent at a high and dangerous rate of speed, to-wit, 70 miles per hour; that the defendant and the employees in charge of said train knew of the highly dangerous and

hazardous condition of said crossing at said time; but notwithstanding said knowledge and the dangerous character of said crossing, said employees drove said freight train through the built-up section of the town of Jamestown and upon and over said High Street at said reckless and dangerous rate of speed and by reason thereof, plaintiff's decedent did not have time to observe the approach of said train, to avoid injury and pass over said crossing safely and was thereby killed.

"Third. That by reason of the highly dangerous and hazardous nature of the intersection of the railroad of said defendant and said High Street in the town of Jamestown, Indiana, the defendant, or its predecessor in title, had erected west of said High Street and south of the main track of said railroad prior to said 10th day of October, 1936, an automatic gong or bell for the purpose of·warning the traveling public of an approaching train; that said automatic gong or bell was operated electrically and was situate approximately thirty (30) feet west of the center of the traveled portion of said High Street; that prior to the 10th day of October, 1936, plaintiff's decedent knew of said automatic gong or bell, had frequently crossed said crossing and relied upon the warning given by said gong or bell of the approach of trains of the defendant; that on the 10th day of October, 1936, and prior thereto, the defendant carelessly and negligently permitted said automatic gong or bell to become out of repair and on said date and immediately prior to the accident described in this complaint said automatic gong or bell was defective, out of repair, and did not give proper warning to travelers upon such public street of the approach of trains; that as plaintiff's decedent and said freight train approached said crossing said automatic gong or bell failed to give plaintiff's decedent any warning of the

approach of said freight train; that the defendant carelessly and negligently failed to equip such public crossing with an automatic gong or bell so as to warn the traveling public, and particularly plaintiff's decedent, of the approach of defendant's freight train; that by reason of the careless and negligent act of the defendant in maintaining at said time and place a defective automatic bell or signal, plaintiff's decedent was not warned of the approach of said train and was thereby killed."

A failure to give statutory signals, as alleged in the first assignment, is negligence *per se*.

In the second assignment of negligence the plaintiff relied upon excessive speed.

There are general allegations of obstructions to the view, but the third specification of negligence discloses that the plaintiff's decedent was familiar with the crossing, and that the defendant maintained an automatic electrically-operated gong or bell at the crossing for the purpose of warning of the approach of trains, and that the decedent was familiar with this warning device, had frequently crossed at the crossing, and that he relied upon the warning given by the automatic gong or bell. It is further alleged in this assignment that the defendant carelessly and negligently permitted the warning gong or bell to become out of repair so that it did not give a proper warning of the approach of the train in question, and failed to give the decedent any warning of the approach of the train. There is the further allegation in this assignment that the defendant failed to equip the crossing with an automatic gong or bell. This, however, is a contradictory allegation, and it appears without controversy that there was an automatic gong or bell installed at the crossing.

Speed of itself never constitutes negligence in the absence of a limiting statute or ordinance. We must reach the same conclusion as the court did in ■ *Union Traction Co.* v. *Howard, Adm'r* (1910), 173 Ind. 335, 340, 90 N. E. 764, 765, in which it is said: "We think there is but one act of negligence alleged; that it requires the concurrence of a high and dangerous rate of speed, coupled or concurring with a failure to give warning, to constitute the negligence charged." See, also, *Brooks, Adm'r*, v. *Muncie, etc., Traction Co.* (1911), 176 Ind. 298, 95 N. E. 1006; *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740.

The second and third assignments of negligence must be considered together and treated as alleging that an adequate warning device had been installed and maintained, of which the decedent had knowledge and upon which he relied for warning of the approach of a train, and that his death was caused by operating the train across the crossing at a high rate of speed at a time when the defendant had negligently permitted its otherwise adequate warning device to become out of order so that it did not warn the decedent of the approaching train. A theory that the operation of the train at the speed alleged, without warning other than that furnished by the statutory signals and the automatic crossing bell, or that the automatic crossing bell was ringing and the decedent was prevented from hearing by extrinsic agencies, constituted negligence is not even remotely suggested by the pleading.

"It is fundamental that in civil actions the plaintiff must recover upon the case he makes in his complaint, or not at all; that he cannot sue upon one state of facts and recover upon another. . . .

"It is furthermore fundamental that the instructions

of the court to the jury must follow the evidence, and be limited to an exposition of the legal effect upon the issues on trial of the relevant facts before the jury for determination." *Terre Haute Electric Co.* v. *Roberts, Guardian* (1910), 174 Ind. 351, 354, 355, 91 N. E. 941, 943.

Error is assigned upon the giving of the following instruction: "The court instructs you that if you find from a fair preponderance of the evidence that the circumstances and surroundings relative and pertaining to the collision of defendant's train with the truck driven by plaintiff's decedent at the time and place in question were such that ordinary care required the giving of other signals in addition to those required by the statute, the failure to exercise such care would be negligence." In another instruction the jury was advised that if the automatic crossing bell had been permitted to get out of order, and that was the proximate cause of the decedent's death, the defendant would be liable. The instruction complained of must have been construed by the jury as authorizing them to determine whether or not the defendant was negligent in not providing warnings other than and in addition to the statutory signals and the crossing bell. This was entirely outside the issues. A verdict could not properly have been based upon the conclusion of the jury that the defendant was negligent in not providing crossing gates or a watchman. It may be well to suggest further that the question of whether negligence could properly have been predicated upon the failure to give such additional warning signals, under the circumstances of the case, is primarily for the court.

Whether a complaint states facts showing actionable negligence is a question of law for the court to deter-

mine. The court determines, first, whether if the facts are true, the plaintiff is entitled to recover. *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Nichols, Adm'r* (1922), 78 Ind. App. 361, 130 N. E. 546. While this judicial function is generally invoked in passing upon the sufficiency of pleadings, it often arises again upon the evidence, and where the evidence most favorable to the plaintiff is insufficient to establish negligence in law, the court should dispose of the matter and not permit the question to go to the jury. In the well-considered opinion in *Wabash, St. L. & P. Ry. Co.* v. *Locke, Adm'r* (1887), 112 Ind. 404, 421, 422, 14 N. E. 391, 399, it is said:

"While it is quite true that it is the duty of the jury, under proper instructions, to determine whether or not upon any given state of facts negligence *ought* to be inferred, it is nevertheless the duty of the court first to say whether, upon the facts most favorable to the plaintiff, negligence *can* be inferred. . . .

"The evidence must affirmatively establish circumstances from which the inference fairly arises that the accident resulted from the want of some precaution which the defendant ought to have taken. . . .

" 'The judge,' said the Lord Chancellor in *Metropolitan R. W. Co.* v. *Jackson* (1877), L. R. 3 App. C. 193, 'has a certain duty to discharge, and the jurors have another and a different duty. The judge has to say whether any facts have been established by evidence from which negligence *may be* reasonably inferred; the jurors have to say whether, from those facts, when submitted to them, negligence *ought to be* inferred. It is, in my opinion, of the greatest importance in the administration of justice that these separate functions should be maintained, and should be maintained distinct. It would be a serious inroad on the province of the jury,

if, in a case where there are facts from which negligence may reasonably be inferred, the judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever.' "

It is pointed out that the rule thus stated has been often recognized by the courts of this country, and numerous cases are cited, including *Conner* v. *Citizens Street Railway Co.* (1886), 105 Ind. 62, 4 N. E. 441, and *Woolery, Adm'r* v. *Louisville Railway Co.* (1886), 107 Ind. 381, 8 N. E. 226. The court then said: "We have been unable to discover any evidence in the record of the present case from which a reasonable inference can fairly arise that the railroad company had omitted any precaution which prudent persons engaged in like business would have taken."

In the case referred to this court passed upon the sufficiency of the facts most favorable to the plaintiff and decided as a matter of law that no negligence was shown. The opinion is long and learned and fully illustrates the considerations that support the rule announced.

The evidence here shows that the view at the crossing was somewhat obstructed by weeds and shrubbery and by some high ground on one side of the right of way, and by houses adjacent to, but not in the right of way nor immediately adjoining it. The crossing was in the residential portion of a town of less than 600 population. It can hardly be said that the obstructions were any greater or different than are

likely to be found in such a locality. There was no evidence of unusual noises calculated to interfere with hearing signals and warnings. There was the usual cross-arm railroad warning, which was visible for a reasonable distance to one approaching the railroad, and the railroad company had provided, in addition to the signals required by statute, an automatic electric bell to warn travelers of the approach of trains. Although there is an allegation that this bell was defective, the plaintiff introduced no evidence of any failure or defect in the bell or that it operated any differently or with any less efficiency than usual. One woman, who said she had ridden in automobiles and observed speed, testified that the train was running at the rate of 60 miles an hour, but the train crew testified that it was running at 50 miles an hour. We are constrained to hold that, under such circumstances, due care did not require the railroad company to provide warning or signaling devices in addition to the statutory signals and the crossing bell referred to. In *Nice* v. *Illinois Central Railroad Co.* (1940), 303 Ill. App. 292, 297, 25 N. E. (2d) 104, 106, which involved a collision at a crossing which was equipped with a swinging disc or wigwag electrically operated and an automatic crossing bell, the court said: "It is hard for this court to see in this day and age, and under the circumstances proven in this case, how it can determine that it is negligence *per se* to operate a train at the rate of 90 miles per hour through the village of Chestnut." The population of Chestnut was about 300.

It was error to give the instruction, and it does not appear that it was not prejudicial.

In 1937, the Legislature enacted a penal statute making it a felony for a person transporting any explosive

or highly inflammable material by means of a motor or other vehicle along any public highway to drive upon the tracks of a railroad "unless such person shall first bring such vehicle to a full stop, and, shall ascertain definitely that no train, car or engine is approaching such crossing and is in such close proximity thereto as to create a hazard or danger of a collision. The provisions of this act shall not apply to railroad crossings which are equipped with mechanical traffic signals or crossings at which flagmen are stationed." Acts 1937, ch. 241, § 1, p. 1161, § 10-1909, Burns' 1942 Replacement, § 2976-1, Baldwin's Supp. 1937. This statute furnishes a legislative appraisal of the value of the mechanical traffic signal as compared with the ordinary engine whistle and bell signal. The obvious purpose of the statute is to prevent collisions between trains and vehicles transporting dangerous materials. Little legislative faith in the efficacy of the engine whistle and bell is evidenced, and where such are the only signals provided the driver of the vehicle must stop and "ascertain definitely that no train, car or engine is approaching." Where a mechanical traffic signal is provided there is no criminal penalty if he fails to use even the ordinary care that ordinary travelers are required to use. It must have been the legislative conclusion that, of course, all travelers would take notice of the warning afforded by mechanical signals.

Since the complaint alleges that the decedent knew of the crossing bell and relied upon it for warning, and there is a complete failure of evidence to show that the defendant was negligent in failing to have the bell ringing, which is supported by answers to interrogatories, and since there is no evidence of anything that interfered with his hearing the bell as on other occasions, it cannot be said that the

accident was proximately caused by the speed of the train coupled with the inadequacy or failure of the crossing bell.

Travelers approaching railroad crossings are required to exercise reasonable care for their own protection. They are required to look and listen for approaching trains, and a failure to do so is negligence, and if such negligence is a contributing cause of a collision there can be no recovery, notwithstanding the railroad company may also be guilty of negligence which was a contributing cause. By its answers to interrogatories, the jury said that the locomotive whistle was sounded and the locomotive bell rang as the train approached the crossing, but the time and place at which the whistle and bell were sounded was not found. Although the apparent preponderance of the evidence shows that these signals were given at the time and place required by the statute, there is some evidence to the contrary, and it must be assumed upon appeal that these signals were not given as required, and this was negligence *per se*, and it may be assumed that this negligence was a contributing cause of the collision.

The mere fact that the defendant was guilty of negligence contributing to the injury is not sufficient to permit a recovery if the negligence of the driver of the vehicle also contributed. It is said in *Baltimore, etc., Railway Co*. v. *Conoyer* (1898), 149 Ind. 524, 528, 48 N. E. 352, 354, 49 N. E. 452: "It is true, as a legal proposition, that the mere omission of signals, or the like, cannot alone, ordinarily, be accepted by a person about to pass over a crossing as an assurance that there is no danger in crossing." The person approaching the crossing must employ his senses of sight and hearing. The complaint alleges, and it must be taken as true, that the decedent was familiar with the crossing and

that he relied upon the automatic crossing signal. The jury found that this signal was sounding, and the evidence is not in conflict upon this point. There is no allegation or proof of any abnormal situation that would have prevented the decedent from hearing the signal. It was heard by many persons farther away from the crossing than the decedent. It must be concluded that he could have heard it if he had listened, and that he either heard the signal and proceeded upon the track notwithstanding, or that he failed to give his attention and to listen for the signal. In either event he was negligent, and the negligence was a definite contributing cause of the collision.

The appellee says that there was fog and rain which interfered with vision and with hearing signals, but, if so, the fact must have been apparent. It did not affect the signals; it merely affected the ability of the traveler to see and hear. The law requires that he use care in looking and listening, and this care must be commensurate with the conditions which confront him. There is no allegation in the complaint that the signals were inadequate because of weather conditions, nor do we find any evidence of fog. There was some evidence that it was raining. But the decedent was acquainted with the crossing and with the automatic signal upon which he relied. If rain interfered with the normal opportunity to observe these signals of danger, it was his duty to take cognizance of the fact and to use his senses in a manner reasonably calculated to inform him of approaching danger. He was not free to drive blindly into a place of known danger. *Cleveland, C., C. & St. L. R. Co.* v. *Houghland, Adm'r* (1909), 44 Ind. App. 73, 85 N. E. 369, 88 N. E. 623.

The verdict was not sustained by sufficient evidence and is contrary to law.

Having determined that the general verdict is not sustained by the evidence, there remains the question as to whether answers to interrogatories within the issues and supported by the evidence require judgment for the defendant. In response to the interrogatories, the jury answered that the whistle and bell upon the locomotive pulling the train were sounded as the train approached the crossing, but the time and place at which they were sounded is not disclosed, and that the automatic crossing bell was ringing, but that the decedent heard none of these signals; that there was a railroad crossing sign at the crossing, which could be seen from a point approximately 125 feet before reaching the crossing; that the engine whistle and automatic crossing bell began sounding when the decedent was about 140 feet from the crossing, and that both signals continued until the time of the collision; that the decedent could see down the main track 150 feet when his motor vehicle was at a point 14 feet south of the south end of the ties on the main track of the crossing, and for a distance of 400 feet when his vehicle was 6 feet and 2 inches south of the south end of the ties; that he was prevented from seeing the train by obscured vision; that to overcome the interference with his view and hearing signals he slowed his speed; that there was no evidence as to whether he stopped his truck. And to the question: "Was there anything to prevent plaintiff's decedent . . . from determining by hearing signals . . . whether a train was approaching in time . . . to stop before entering upon said tracks?" the jury answered: "Obscured vision and speed of train." It is obvious that obscured vision could not

have prevented his hearing the signals. It is possible that the speed of a train might affect the possibility of stopping in time to avoid injury if the signals were given when the train was very close to the crossing, but, in answer to one of the interrogatories, the jury said that the plaintiff's decedent was "about 140 feet" from the crossing when the engine whistle and the automatic crossing bell began sounding, and that they continued sounding until the time of the collision, and that he slowed his speed as he approached the crossing.

The complaint declares that the decedent was familiar with the crossing and relied upon the automatic crossing bell to warn him. There is no allegation of any abnormal obstruction to or interference with his ability to hear the bell upon this occasion, nor is there the slightest suggesion of any such condition in the evidence. The complaint was on the theory that the bell was not ringing. The jury, in answer to an interrogatory, said it was ringing audibly. All of the witnesses called by both sides who testified upon the subject said that the bell was ringing. There is no evidence that it was ringing in any other than the normal and usual manner, and the burden of showing that it was not ringing normally and in the manner in which it rang when the decedent had relied upon it on other occasions was upon the plaintiff. The answer that it was ringing audibly must be construed as meaning that it was audible to those whose attention it was intended to attract. No other interference or interpretation of the answer could be reasonably justified under the undisputed evidence. The jury's answer that the decedent was prevented from hearing the crossing bell by obscured vision and speed of the train must in the light of the issues and of the undisputed evidence be construed as an answer that there was nothing else

to prevent his hearing it. It appears therefore from the interrogatories that the automatic crossing bell was ringing, and that there was nothing to prevent or interfere with plaintiff's decedent hearing it; and these facts, supported as they are by unconflicting, testimony, in conjunction with the allegations that plaintiff's decedent was familiar with the crossing and relied upon the automatic crossing bell, establish that he either heard the bell and went upon the crossing notwithstanding, or that he failed to give his attention to and listen for the automatic signal. In either event he was guilty of contributory negligence.

It was error to deny the appellant's motion for judgment on the answers to the interrogatories notwithstanding the general verdict.

Judgment reversed, with instructions to enter judgment for the defendant on the answers to the interrogatories.

NOTE.—Reported in 47 N. E. (2d) 615.