ELGIN, JOLIET & EASTERN RAILWAY COMPANY
v. SCHERER.

[No. 18,097. Filed April 26, 1951. Rehearing denied
May 25, 1951. Transfer denied June 20, 1951.]

478

*Harlan L. Hackbert;* and *Knapp, Cushing, Hershberger & Stevenson* (of counsel), both of Chicago, Ill.; *Glenn D. Peters;* and *Peters & Highland* (of counsel), both of Hammond; and *Edward J. Ryan,* of Valparaiso, for appellant.

*George Cohan,* of Gary; *Robert G. Estill;* and *Estill, Helbing & Fritz* (of counsel), both of East Chicago; and *Max Ruge* (of counsel), of Chesterton, for appellee.

WILTROUT, C. J.—A small Crosley pick-up truck owned and operated by appellee was struck by appellant's railroad train. Appellee was injured and the truck was demolished. He filed his complaint in two paragraphs, one for personal injuries and one for property damage. The trial resulted in verdicts in his favor, upon which judgment was entered.

Appellant urges: (1) that appellee was guilty of contributory negligence as a matter of law, and (2) that the court erred in instructing the jury by giving the court's instructions Nos. 1, 4 and 6, and in refusing to give appellant's tendered instruction No. 25.

The evidence most favorable to the verdict indicates the facts hereinafter set forth. 149th Street in the City of East Chicago, Indiana, runs in an easterly and westerly direction. At a point between Kennedy Avenue and Grasselli Avenue it crosses three sets of railroad tracks at approximately right angles. There were no gates, wig-wag or automatic signals at the crossing, and no watchman or flagman at the time of the accident.

On the night of December 21, 1947, at about 11:40 P. M. appellee was on his way home from work, driving his truck and approaching the crossing from the east. It was a dark, foggy night. Visibility was poor. He was familiar with the crossing and had crossed it twice a day, five days a week, for several weeks. As he came to the crossing he stopped about ten or twelve feet east of the eastermost rail and pulled the sliding window on the left hand side of his truck back about eight inches. He looked to the left and glanced to the right. He did not see or hear anything, so he began to go across the crossing at two or three miles an hour. He was still looking and listening as he began crossing the crossing, and kept the window open. As he crossed the second set of tracks he glanced up and saw in front of him a big black object, which turned out to be appellant's train.

The train which struck appellee's truck was running light, and consisted only of a caboose, locomotive and tender. The locomotive was backing up and was pulling the caboose. In other words, as the train approached the crossing from the south the leading element was the tender, followed by the locomotive and then the caboose.

The train was running without a lighted headlight on the tender, and no signal of its approach was given by whistle or bell. A train running light is fairly quiet.

Following the impact the fireman called to the engineer to "big holer." As soon as the fireman called, the air brakes were applied and set in emergency, and the sand turned on. After that the train, according to the engineer, traveled about 250 feet, and when it came to a stop the truck was still in contact with the back of the tender. He also testified that the truck was pushed in the neighborhood of 250 feet. There was other testimony, however, that after the accident the truck was 156 feet, by actual measurement, north of the north edge of the pavement.

While the testimony of the train crew was that the speed of the train was six to seven or eight miles per hour, a former locomotive engineer testified, in answer to a hypothetical question, that "with the airbrakes and sand and everything properly working, and the weight of the engine, and the speed of six to eight miles an hour . . . that train should have stopped in thirty feet." The evidence supports a reasonable inference that the train was going considerably faster than the speed testified to by the train crew. *Acton* v. *Lowery* (1941), 109 Ind. App. 581, 34 N. E. 2d 972; *Alabama Great Southern R. Co.* v. *Molette* (1922), 207 Ala. 624, 93 So. 644.

Appellant says that the evidence "indisputably shows that the plaintiff was guilty of contributory negligence as a matter of law by driving his motor car blindly and deafly across a familiar grade crossing." Concededly a person is not free to drive blindly into a place of known danger, and the mere omission of signals, or the like, cannot alone, ordinarily be accepted as an assurance that there is no danger in crossing. *New York Central R. Co.* v. *Powell* (1943), 221 Ind. 321, 47 N. E. 2d 615; *The Baltimore, etc., R. W. Co.* v. *Conoyer* (1898), 149 Ind. 524, 48 N. E. 352, 49 N. E. 452.

While the omission to give warning by whistle and bell, and to have a lighted headlight did not relieve appellee from exercising care to avoid injury, yet the absence of such warnings and headlight are circumstances to be taken into consideration in determining whether appellee was guilty of contributory negligence. *Cleveland, etc., R. Co.* v. *Penketh* (1901), 27 Ind. App. 210, 60 N. E. 1095.

The evidence does not lead to the sole conclusion that appellee drove his vehicle across the crossing blindly and deafly. We cannot say, as a matter of law, that appellee was guilty of contributory negligence. *The Baltimore, etc., R. W. Co.* v. *Conoyer, supra.*

The case of *New York Cent. R. Co.* v. *Milhiser* (1951), — Ind. App. —, 97 N. E. 2d 379, does not require a contrary conclusion. In that case a driver's view was obstructed by smoke in combination with temporary snow flurries. He stopped before reaching the tracks, and then went forward and traveled thirty-eight feet without again looking in either direction. The facts in that case presented an entirely different situation than do the facts in this case. Other cases cited by appellant are also clearly distinguishable.

The court's instruction No. 1 contained verbatim copies of the complaint and answer. Appellant objected to this instruction for the reason that "it submits issues to the jury on which no evidence has been introduced and which should be withdrawn from the jury."

This objection does not point out the issues as to which appellant claimed no evidence was introduced. It is too general and indefinite to constitute a specific objection as required by Rule 1-7. Therefore no error with respect to the giving of this instruction is available. *Pennsylvania R. Co.* v. *Sargent, Admrx.* (1949), 119 Ind. App. 195, 83 N. E. 2d 793;

*Johnnie J. Jones Exposition* v. *Terry* (1945), 116 Ind. App. 189, 63 N. E. 2d 159.

The court's instruction No. 4 told the jury: "It is not necessary, to entitle the plaintiff to recover in this action, that he prove all of the separate and distinct acts of negligence alleged in his complaint. To be entitled to recover herein it is only necessary that the plaintiff prove one or more of his allegations of negligence along with the other elements of his cause of action, as explained in these instructions." Appellant's objection to this instruction, although lengthy, is for the most part couched in general terms. We do gather from it, however, that appellant objected that the instruction would permit a recovery upon the allegations of negligence by reason of the failure to install and maintain gates, or a wig-wag signal, and flashers, when there was no evidence of such failure. Appellant attempts to present error in the giving of this instruction upon another ground, that is, that the appellant was under no duty to maintain such devices. Rule 1-7 provides for the stating of specific objections and further provides: "No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required." If we have given appellant's objection too narrow a construction, still the instruction was not subject to the objection urged in appellant's brief, and no error was committed in giving the same.

The instruction refers to "acts of negligence alleged" and "allegations of negligence," and concludes with the phrase "as explained in these instructions." The court by its instructions Nos. 26, 27 and 29 in effect told the jury that the allegations complained of were not allegations of negligence. The jury was specifically instructed that appellant could not be held liable for a failure to

maintain such devices. The jury was further instructed that all instructions given to them were to be construed together as an entirety and not separately or in disconnected parts. So construed, the instruction complained of is not misleading or in conflict with other instructions.

In the case of *Chicago, etc., R. Co.* v. *Steele* (1918), 187 Ind. 358, 118 N. E. 824, 119 N. E. 483, an instruction similar to the court's instruction No. 4 was given. Our Supreme Court said:

> "In objecting to this instruction counsel for appellant direct particular attention to the allegations of negligence which are above set out and insist that some of these averments might have been proved without authorizing a verdict for appellee, and the instruction was therefore erroneous and harmful. Conceding appellant's contention it is not now available, because of the fact that instructions Nos. 16, 17, 18 and 19, given to the jury at the request of appellant, separately considered each of the charges above referred to and told the jury that proof thereof would be insufficient to sustain a recovery. The effect of these instructions was to eliminate from the complaint the allegations to which appellant objects, and we must now assume that the verdict rests on evidence which tends to prove other charges of negligence relative to the conduct of the employees in control of appellant's switch engine."

Appellant introduced evidence to the effect that the headlights on this particular locomotive were inspected by its inspector and that such headlights were governed by the rules of the Interstate Commerce Commission. On cross examination a regulation of the Interstate Commerce Commission was introduced in evidence by appellee without objection. Appellant also stipulated that the train involved in the accident was engaged in interstate commerce and that the regulation was in full

force and effect at the time of the accident. This regulation concerns the intensity and location of headlights of locomotives in road service.

In its instruction No. 6 the court read this regulation. Appellant's objection was to the effect that the instruction gave the jury the erroneous impression that a violation of this regulation would be negligence, and that it was outside the issues inasmuch as there was no allegation in the complaint charging appellant with failure to have proper lights as required by the regulation, the allegation in the complaint being that no headlight was burning.

Even if the jury could have inferred from this instruction standing alone that they might find appellant negligent if a violation thereof was shown, it is clear that the jury could not have been misled in view of another instruction tendered by appellant and given as the court's instruction No. 28. By the latter instruction it was explained that: "The rule of the Interstate Commerce Commission introduced in evidence as to locomotive headlights, merely provides a mechanical standard for lighting equipment and is not intended to fix a standard of care. Consequently, you should not find the defendant negligent on the ground that it might appear here that the rear headlight of the defendant's locomotive was not in exact compliance with the standard fixed by the Rule at the time of the accident."

Appellant tendered its instruction No. 25, which the court refused to give. This instruction reads: "I instruct you that there is no evidence in this case from which you can find the defendant was negligent because of the operation of its train at the time and place of the accident at a high and excessive rate of speed."

The allegations in the complaint as to a high and dangerous rate of speed were coupled with allegations

as to the fog, as to the view being obstructed, and the absence of wig-wag or automatic signals, watchmen, flagmen and gates. There were further allegations of a failure to ring the bell, sound the whistle, and to have a lighted headlight.

As stated in *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740: "To be guilty of negligence in operating a car or train at a ■ certain rate of speed under certain circumstances, over a crossing that is not protected by a watchman or bell or other special warning, is not the same as being guilty of negligence in failing to station a watchman or bell or other signal at a crossing over which cars and trains might be operated more slowly and under other circumstances with safety."

Appellant argues upon the basis that the evidence of the train crew as to the speed of the train was uncontradicted. As previously noted, this is not the ■ fact. While the high and dangerous speed was alleged as being forty-five to fifty miles per hour, it was not necessary to prove this exact speed. A plaintiff is not bound to prove the facts precisely as alleged, but it is sufficient if he prove the substance of the allegation. *The Terre Haute and Indianapolis Railroad Company* v. *McCorkle* (1895), 140 Ind. 613, 40 N. E. 62.

Appellant also relies upon the well-established rule that speed of a train *in and of itself* never constitutes negligence in the absence of a limiting statute ■ or ordinance. *New York Central R. Co.* v. *Powell* (1943), 221 Ind. 321, 47 N. E. 2d 615. This, however, is not the tenor of the instruction which appellant ·tendered. The instruction is based upon a lack of evidence of high and excessive speed. Had appellant desired an instruction that the speed in and of itself does not

constitute negligence, it could have tendered an instruction to that effect. This it did not choose to do. But because speed in and of itself never constitutes negligence, "This does not excuse it from the common-law duty of exercising care for the safety of persons traveling on highways crossing its tracks; and the rate of speed to be used in a given case depends on the nature of the crossing, and other circumstances surrounding the alleged injury." *Brooks* v. *Muncie, etc. Traction Co.* (1911), 176 Ind. 298, 95 N. E. 1006; Annotation: 154 A. L. R. 212. There was evidence from which the jury could have found that the speed of the train was a high and dangerous rate of speed under the facts and circumstances revealed in this case, and there was no error in refusing the tendered instruction.

Considering the instructions given as a whole, they state the law with substantial accuracy and fairness, and furnish no grounds for reversal.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 2d 369.