CARMICHAEL *v.* THE BALTIMORE & OHIO RAILROAD COMPANY.

[No. 18,169. Filed May 17, 1951. Rehearing denied June 19, 1951.]

464

*Jerdie D. Lewis,* of Terre Haute; *Ralph S. McQueen;* and *Craig & Craig,* both of Brazil, for appellant.

*Beasley & Beasley,* of Terre Haute; and *Harvey L. Fisher,* of Brazil, for appellee.

WILTROUT, C. J.—Appellant brought this action to recover damages for injuries received when the automobile which he was driving ran into the side of a moving freight train.

A demurrer to appellant's amended complaint was sustained. Appellant refused to plead further and judgment was entered against him. He assigns as error the sustaining of the demurrer.

The allegations of the complaint material to this opinion may be summarized as follows: A much traveled highway runs in a northerly and southerly direction and intersects appellee's railroad. The road, from a point approximately a quarter of a mile south of the intersection, follows a steep curving grade down to the crossing. The view both to the right and left of the road was obstructed for said distance by banks, hills, weeds, briars and other vegetation. To the north of the crossing were dark wooded areas which formed a dark background for railroad cars on the crossing at night. The road for said quarter of a mile was surfaced with gravel, was rough, uneven and full of holes and bumps. There was a crossarm on the north side of the crossing but no signs of any kind or character on the south side to warn approaching travelers of the presence of the tracks. That by reason of said facts the crossing was extremely dangerous, hazardous and one of unusual peril, and which facts were known to appellee.

Appellee's train, consisting of engine, tender, boxcars and coal cars, approached the crossing from the west. It stopped when the first car attached to the tender was approximately forty feet east of the crossing. The engine and tender were disconnected from the train of cars and proceeded west to what is commonly known as the Coal Bluff Y. There eight cars were attached to said tender and backed across the crossing and coupled to the cars which had been left east of the crossing. The engine and tender were then about 350 feet west of the crossing. The train was then operated in a westerly direction, and the train of cars was moving over the crossing at the time of the accident complained of.

The accident happened on December 13, 1947, at about 9:00 o'clock P. M. Appellant was driving an

automobile and approaching the crossing from the south. The night was extremely dark. Appellant was not familiar with the highway and was not aware of the presence of the railroad. He drove between ten and fifteen miles an hour, with his headlights turned on, and drove into the train, receiving personal injuries.

It is alleged that because of the combination of facts and circumstances set forth and the fact that there were no signals or warning on the south side of the track and no notice or warning was given by appellee of the presence of its tracks and the presence of the train, appellant was not able to discover or see a line of black coal cars which blended with the darkness of the night and the dark wooded areas to the north of the crossing in time to avoid striking the same. That the coal cars were black or of a dark color, with no lights or signals of any type, and were not visible on said dark night. That the engine had passed beyond or was located west of said crossing, out of sight.

The acts of negligence charged are: (1) that appellee negligently failed to give any notice or warning of the presence of its railroad, and (2) that appellee negligently failed to give any notice or warning of the presence of its moving train upon the crossing.

It is not alleged that any of the statutory warning signs were missing. The parties agree that the complaint does not charge a failure to comply with any statutory duty, but seeks rather to plead an action for negligence based upon common law duties.

It is stated in *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. 2d 714:

"*Pennsylvania Railroad Co.* v. *Huss, supra;* *C. C. C. & St. L. Ry Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708, and *Morley* v. *C. C. C. & St. L. R. R. Co.* (1935), 100 Ind. App. 515, 194 N. E. 806, were all actions in which damages were

sought for injuries received while riding in an automobile which was driven into and collided with a train standing upon or moving across a highway. It is pointed out in those cases that neither the statute nor the common law requires a railroad company to give notice by signal or otherwise that one of its trains is standing upon or moving over a highway crossing, unless ordinary care for the safety of others would require it. It was held in each case that it could not be reasonably anticipated, in the natural course of events and according to common experience, that the driver of an automobile might attempt to cross over the tracks when they were occupied by a train; that 'certainly it cannot be reasonably said that it is usual for the driver of an automobile traveling over the highways of this state to run into a freight train standing over a crossing, or that such an event is likely to occur.' *Pennsylvania Railroad Co. v. Huss, supra* (p. 80)."

If it could be said that, under the facts alleged, appellee was guilty of negligence contributing to the injury, this is not sufficient to permit a recovery if the negligence of the appellant also contributed. To render the railroad liable its fault must be the proximate cause of the collision. *New York Central R. Co. v. Powell* (1943), 221 Ind. 321, 47 N. E. 2d 615; *Morley v. C., C., C. & St. L. R. R. Co.* (1935), 100 Ind. App. 515, 194 N. E. 806.

Appellant alleges that he was not familiar with the highway and was not aware of the presence of the railroad. Nevertheless, it is a matter of common knowledge that Indiana highways are frequently intersected by railroads. *New York Central R. R. Co. v. Casey, supra; Pitcairn v. Honn* (1941), 109 Ind. App. 428, 32 N. E. 2d 733. Motorists choosing to travel upon strange highways at night must use care commensurate with the increased hazard, if any. *Morley v. C., C., C. & St. L. R. R. Co., supra; New*

*York Central R. Co.* v. *Powell, supra.* They are required to exercise reasonable care for their own protection. *New York Central R. Co.* v. *Powell, supra; New York Central R. R. Co.* v. *Casey, supra.*

The complaint alleges that by reason of the facts set forth the crossing was made extremely dangerous, hazardous and of unusual peril. These characterizations and epithets add nothing to the to the allegations of fact. *Killion* v. *Chi., Milw., St. Paul, & Pac. R. R.* (1940), 107 Ind. App. 527, 25 N. E. 2d 647. The facts alleged do not in our opinion show conditions so unusually hazardous that railroad employees should realize that a reasonably prudent motorist may collide with a moving train.

"Statutory provision is made for the maintenance of signs at the side of the highway indicating the approach to a railroad crossing. The signs are maintained for the protection of those using the highway. Reasonable prudence requires that one using the highway take care to observe such signs, and take notice of the proximity of a railroad track, which is of itself notice of danger." *Opple et al.* v. *Ray* (1935), 208 Ind. 450, 195 N. E. 81; Acts of 1921, ch. 232, § 9, p. 678; Burns' 1951 Replacement, §§ 55-2003—55-2011. See also *New York Central R. R. Co.* v. *Casey, supra,* and *Pitcairn* v. *Honn, supra.*

"The primary purpose of signals, gates, other devices, and of watchmen when required to be maintained at points where railroad tracks intersect highways, streets, etc., is to warn persons traveling on and over such ways that a train is approaching and to protect them from damage and injury likely to ensue if they attempt to use such crossing before the train passes thereover." *Pennsylvania Railroad Co.* v. *Huss* (1933), 96 Ind. App. 71, 180 N. E. 919; *Morley* v. *C., C., C. & St. L, R, R. Co., supra.*

The complaint alleges that the view to the right and left of the road was obstructed from a point approximately a quarter of a mile south of the intersection. This is beside the question. Appellant does not seek to recover because of any violation of duty owed him by appellee as its train approached the crossing, but because of failure to give warning of the presence of the moving train upon the track. *Morely* v. *C., C., C. & St. L. R. R. Co., supra.*

The driver of an automobile is not chargeable with negligence for failing to see *every* obstruction in the highway. *Opple et al.* v. *Ray, supra; New York Central R. R. Co.* v. *Casey, supra; Cushman Motor Delivery Co.* v. *McCabe, Admr.* (1941), 219 Ind. 156, 36 N. E. 2d 769. Statements appearing in *Pennsylvania Railroad Co.* v. *Huss, supra,* and in *C. C. C. & St. L. Ry. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708, to the effect that to drive an automobile at such a speed that it could not be stopped within the distance that objects could be seen ahead of it is contributory negligence as a matter of law are criticized in *Opple et al.* v. *Ray, supra,* as being too broad. The criticism, however, was not meant to apply to usual hazards and known dangers such as the presence of railroad tracks and trains across highways. *Pitcairn* v. *Honn, supra.*

It is said in *Pennsylvania Railroad Co.* v. *Huss, supra:*

"It would seem to be true that an object as large as a freight car would of itself, under ordinary conditions, be sufficient notice of its presence to warn any person using the highway with ordinary care that the highway was obstructed . . . Common knowledge and experience is sufficient to warn that the crossing can not be used when already occupied, and the law does not require that

information be given of an existing fact that ordinary observation will disclose."

In *New York Central R. R. Co.* v. *Casey, supra,* the court observed:

". . . it has yet to be demonstrated that automobiles driven in a reasonably prudent manner are driven into the sides of trains upon crossings, and that such conduct is so usual and probable as to be reasonably anticipated."

Again, in *Dyer, Admr.* v. *New York Central R. R. Co.* (1938), 214 Ind. 695, 14 N. E. 2d 719, 17 N. E. 2d 839, the Supreme Court states:

"The complaint declares upon negligence on the part of the appellee in failing to maintain the highway for the full width of the public highway right of way, and upon negligence in failing to provide signals of some sort, other than statutory signals, to warn travelers that there is a train *upon* the track. Neither constitutes actionable negligence."

While it is alleged that the color of the cars blended with the dark wooded area in the background, an element which would affect the visibility of the train, it does not appear from the complaint that there were any obstructions to the vision between appellant's automobile and the train as he neared the intersection. The train was moving over the intersection as he approached. He was driving at a rate of speed of ten to fifteen miles an hour and with his headlights lighted. Moving trains are more easily seen at night than those which are stationary. The conclusion is inescapable that had he exercised the care of a reasonably prudent man in looking in the direction in which he was driving he would necessarily have seen the train before he got so close thereto that a collision was inevitable.

The omission of the alleged duty of appellee to give warning of the presence of its tracks and train is shown upon the face of the complaint not to have been the cause of the collision and injury. The complaint shows that appellant was guilty of contributory negligence as a matter of law. *Killion* v. *Chi., Milw., St. Paul, & Pac. R. R., supra; Pennsylvania Railroad Co.* v. *Huss, supra; C. C. C. & St. L. Ry. Co.* v. *Gillespie, supra;* 7-8 Huddy, *Cyclopedia of Automobile Law,* § 17, p. 66.

The complaint fails to state a cause of action, and the demurrer to it was properly sustained.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 2d 698.