NEW YORK CENTRAL RAILROAD COMPANY *v.*
SHOLL ET AL.

[No. 18,857. Filed December 19, 1957.]

136

*Harold D. Stump,* of Auburn, for appellant.

*Edgar W. Atkinson, Hugh G. Sanders* and *Atkinson & Sanders,* all of Auburn, for appellees.

CRUMPACKER, J.—This is an action by the appellees against the appellant to recover damages to personal property resulting from a railroad crossing accident on May 29, 1953, at a point in DeKalb County, Indiana, where a county highway known as the Jackman Road, running north and south, intersects at right angles the double track main line of the appellant railroad, running east and west through said county. A ditching machine being towed by a dump truck, both belonging to the appellees, became stalled or hung-up on said

crossing and while in such unfortunate predicament both items of equipment were struck and severely damaged by two of appellant's trains, one approaching from the east and the other from the west. The appellee's complaint alleges that the accident was due solely to the fault of the appellant in two particulars. First, they say that their truck and ditching machine became stalled on the crossing because the appellant was negligent in maintaining its south or eastbound track at an elevation of approximately 10 inches above the north or westbound track whereby said equipment, with a meager clearance of 10½ inches on level ground, caught on the south track. Second, they contend the appellant was negligent in failing to stop its trains "when signaled to do so by the appellees and while in plain sight of the crossing." There is no allegation in the complaint that the appellant, in the exercise of ordinary care, could have stopped its trains in time to have avoided the accident after receiving the appellees' signals or after it had discovered the perilous position of appellees' truck and ditching machine upon the tracks. An examination of the record, however, discloses that as far as the second charge of negligence is concerned, the appellees tried their case below upon the theory that if the stalling of their equipment on the appellant's tracks was in any manner due to their own negligence, nevertheless the appellant had the last clear chance to avoid the accident of which it failed to avail itself. That being the theory below we will so consider it here.

To the appellees' complaint the appellant filed answer under Rule 1-3 and also a counter-claim for damages to and loss of the use of its two locomotives. Said counter-claim proceeds upon the theory that the unextricable position of peril in which the appellees placed their truck and ditching machine at the time and place

of the accident was due entirely to their own negligence and that after the appellant discovered the situation it did everything humanly possible to stop its trains before the collision. The case was tried to a jury in the DeKalb Circuit Court which found against the appellant on its counter-claim and for the appellees on their complaint and assessed their damages in the sum of $1,900.00. Judgment went accordingly.

In this appeal the appellant urges the following propositions: (I) The court erred in refusing to give to the jury the appellant's tendered instruction No. 17. (II) There is a failure of proof of negligence on the part of the appellant in the maintenance of the crossing in controversy. (III) There is a failure of proof of negligence on the part of the appellant in the operation of its trains at the time and place of the accident. (IV) The record discloses contributory negligence as a matter of law.

I. Alleged error in refusing to give appellant's tendered instruction No. 17.

The appellant's instruction No. 17 reads as follows:

"If you find that a perilous condition was created by the presence of the plaintiff's equipment upon the railroad tracks of the defendant as a result of a negligent act or omission on the part of the plaintiff, and if you further find that, after knowledge by the defendant of such perilous condition, said defendant used with reasonable care all available facilities and abilities to avoid a collision, then it is the law, and I instruct you that you are not to consider and it is outside the issues in this case, whether the last clear chance or opportunity to avoid the collision rested with the plaintiff or with the defendant."

Although the court refused this instruction it gave instruction No. 11 on its own motion. That part of said instruction which is pertinent to the question under consideration is as follows:

"But, on the other hand, if you find that the said train crews applied their emergency brakes and exercised reasonable diligence in trying to stop their trains and prevent the collisions as soon as they saw that plaintiff's truck and trenching machine were stalled on defendant's tracks, but that said trains could not be so stopped in time to avoid said collisions, the said negligence if any, on the part of the plaintiffs in driving their truck and trenching machine on said tracks and stalling the same would continue to be contributory negligence such as would preclude the plaintiffs from recovering damages in this case.

"Also, if you find that said truck and trenching machine were so stalled on said tracks that the same would collide with either of said trains if either of them continued without stopping, and that a collision with either of said trains would have produced the damages complained of in plaintiffs' complaint, and if you find that the stalling of said truck and trenching machine was the proximate result of negligence on the part of the plaintiffs, and if, under these circumstances, it was not possible in the exercise of reasonable diligence, for the train crew on either one of said trains to have stopped their train before the collision of such train with plaintiffs' truck and trenching machine after said train crew saw that plaintiffs' truck and trenching machine were so stalled, then such contributory negligence if any of the plaintiffs in driving and stalling said truck and trenching machine on said tracks, would continue to be a contributing cause of said collision and would preclude the plaintiffs from recovering damages in this case."

It seems to us that the above instruction fully covers the subject matter of appellant's instruction No. 17 and therefore no error can be predicated upon the court's refusal to give the tendered instruction. *Hettmansperger* v. *Hettmansperger* (1937), 103 Ind. App. 632, 5 N. E. 2d 685; *Young* v. *Mader* (1938), 105 Ind. App. 532, 14 N. E. 2d 329.

II. Alleged failure of proof of negligence in construction and maintenance of crossing.

It is conceded that the appellant violated no regulation of the Public Service Commission in respect to the manner in which the crossing was constructed or maintained at the time of the accident. Obviously, then, negligence on the part of the appellant must be predicated upon the violation of some statutory or common law duty the appellant owed the appellees in respect thereto. The general rule covering the duty, as well as the corresponding liability, of a railroad company whose tracks intersect a public highway is stated thus in 74 C. J. S., Railroads, §718, p. 1316:

"In general, sometimes by virtue of statute or ordinance, a railroad company charged with the duty of constructing or maintaining and repairing a highway crossing is liable for injuries sustained by one making a proper use of such crossing through its negligence in failing to construct or maintain the crossing in such a manner as to render it reasonably safe and convenient for the usual and ordinary purposes of the public; and a failure of the railroad company to comply with the duty imposed on it by law with respect to the maintenance of a highway crossing and the approaches thereto may be negligence per se as a matter of law."

The only statute we have on the subject is the Fifth Subdivision of §55-601, Burns' 1951 Replacement, which reads as follows:

"To construct its road upon or across any stream of water, water-course, highway, railroad or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or water-course, road or highway thus intersected to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises."

In *Cleveland, etc. R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822, this court construed the above statute as imposing upon a railroad company "the duty of restoring and maintaining the highway crossing in such a way as to be reasonably safe for travel . . . ." This means that the railroad company cannot be required to maintain a foolproof crossing or one that will be safe under any and all circumstances and it is not obligated to anticipate and provide against extraordinary circumstances and dangers. 74 C. J. S., Railroads, §718, p. 1319, and cases cited.

These rules, when applied to the evidence most favorable to the appellees in this case, and to all reasonable and legitimate inferences to be drawn therefrom, fail to indicate actionable negligence. The difference in the elevation of the two tracks, which did not exceed 10 inches, is the only thing of which the appellees complain. The undisputed evidence discloses that this was occasioned by periodical, general service raises of the tracks along the entire length of the appellant's railroad lines and in accord with standard railroad maintenance procedure. It is not disputed that the space between the north and south tracks was smooth and graded with asphalt in such a manner as to create an even slope from one track to the other. There is no evidence in the record that the crossing with respect to the difference in track elevations was maintained in other than a reasonably safe and convenient condition for the usual and ordinary purposes of the traveling public.

The mere fact that the appellees' equipment stalled on the crossing because a clearance of scarcely over 10 inches on level ground was not sufficient to get it over the crossing safely is not, in our opinion, sufficient to warrant a finding that said crossing was not reasonably safe for ordinary travel. As was

said in *The Terre Haute and Indianapolis Railroad Company* v. *Clem* (1890), 123 Ind. 15, 23 N. E. 965:

> "Accidents do happen despite the utmost care and diligence; but, with very rare exceptions, the happening of an accident does not of itself supply grounds for inferring negligence. It is common knowledge that accidents occur which even the highest degree of care can neither anticipate nor prevent; but, in cases where an extraordinary accident happens, which ordinary prudence could not have foreseen, or anticipated, neither a natural nor an artificial person is liable."

It seems to us that the stalling of the appellees' truck and ditching machine on the appellant's tracks was such an unusual occurrence as to take it out of the realm of foreseeability and eliminate the condition of the crossing as the proximate cause of the accident. *Button* v. *Pennsylvania R. Co.* (1944), 115 Ind. App. 210, 57 N. E. 2d 444.

III.   Alleged failure of proof of negligence on the part of the appellant in the operation of its trains at the time and place of the accident.

The only negligence in this respect of which the appellees complain is the appellant's failure, as stated in their complaint, "to stop its two trains when signaled so to do by the plaintiffs and while in plain sight of the crossing." Since the case was tried below upon the theory that the appellant had the last clear chance to avoid the accident but negligently failed to avail itself of such opportunity, we will regard the above allegations as charging such negligence. It will be noted that nowhere in the appellees' complaint is it charged that the appellant's agents, in charge of the two trains involved in the accident in suit, failed to keep a proper lookout for persons or things upon or in near proximity to appellant's tracks and had they done so they would have discovered appellees' equip-

ment in its perilous position in time to have stopped their respective trains, in the exercise of ordinary care, and thus have avoided the collision. Confined, as the appellees are, to the issues pleaded and tried there can be no recovery for negligence in the operation of the trains involved unless there is evidence tending to prove that the appellant's train crews failed to do something they should have done, in the exercise of ordinary care, to stop their respective trains after they were signaled to stop by the appellees or after they actually saw or knew of the perilous position of the appellees' equipment.

The doctrine of last clear chance now prevailing in Indiana is stated in *Terre Haute, etc. Traction Co.* v. *Stevenson* (1920), 189 Ind. 100, 123 N. E. 785, 126 N. E. 3, as follows:

"The traveler's peril known to the motorman creates a special duty to take advantage of his chance, if he have a chance. This duty to avoid a collision continues so long as the peril continues. When a traveler is in a perilous situation resulting from his own negligence, and the peril is known to the motorman, in time to clearly afford an opportunity to avoid injuring the one in peril, his duty to use the chance arises and continues while the peril lasts, whether the negligence of the traveler continues or is concurrent, or whether the traveler becomes duly, though ineffectively diligent. Neither concurrence nor continuance of the traveler's negligence alone is a defense when the motorman has a last clear chance to avoid the injury by due diligence after the discovery of the peril. Such continuance of the negligence of the traveler would be a defense if the motorman did not know of the peril thereby created, though the motorman was at the time negligent in not knowing. No special duty to use due care in favor of a particular party arises without actual notice of the particular party's peril."

It must be conceded that the railroad company is under a general duty to use all ordinary and reasonable

144

care to avoid injury to a traveler on a highway desiring to cross its tracks but as heretofore said this case was neither brought nor tried upon the theory that the breach of any such general duty was responsible for the destruction of the appellees' property. Both by their pleadings and proof the appellees sought relief on the theory that the appellant owed them a special duty because of its actual knowledge of the perilous and helpless position of their truck and ditching machine on the crossing which duty the appellant negligently failed to perform.

We have searched the record in vain for one iota of evidence tending to show that the appellant's servants in charge of the train involved in this controversy failed to do anything which could have been done to stop their respective trains after they had actual knowledge that the appellees' equipment was in a position of imminent peril. Nor is there any evidence in the record tending to dispute the testimony of the appellant's train crews to the effect that when the appellees first attempted to flag the trains down, there had already been an emergency application of the brakes and nothing further could have been done to stop.

IV. The record allegedly discloses contributory negligence as a matter of law.

In view of our conclusion that there is no evidence tending to prove the negligence charged against the appellant, there is no need to discuss the question of contributory negligence.

Judgment reversed and cause remanded with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 146 N. E. 2d 565.