TYLER, BY HER NEXT FRIEND, ETC. *v.* CHICAGO &
EASTERN ILLINOIS RAILWAY.

[No. 30,076. Filed March 21, 1961.]

*John L. Carroll, Edwin W. Johnson, Elvin H. Hewins, Johnson & Carroll*, of counsel, and *Iglehart & Hewins*, of counsel, all of Evansville, for appellant.

*Bamberger, Foreman, Oswald & Hahn*, of Evansville, for appellee.

*George T. Schilling, Russell H. Hart* and *Stuart, Branigin, Ricks & Schilling*, of counsel, of Lafayette, for Wabash Railroad Company, *Amicus Curiae*.

*Harker, Irwin, Campbell & Harker*, of Frankfort, for New York, Chicago & St. Louis Railroad Company, et al., *Amicus Curiae*.

BOBBITT, C. J.—This case comes to us on petition to transfer from the Appellate Court under Acts 1933, ch.

151, §1, p. 800, being §4-215, Burns' 1946 Replacement. See: *Tyler* v. *Chicago & Eastern Illinois Railway* (1959), 163 N. E. 2d 122, for opinion of the Appellate Court.

Appellant, a minor, brought this action by her next friend, seeking to recover damages for personal injuries growing out of a collision of an automobile, in which she was a non-paying passenger, and a freight car standing on a railroad crossing.

Two errors are assigned as follows:

"1. The court erred in sustaining Appellee's motion to strike portions of Paragraphs I, II, and III of Appellant's complaint.

"2. The court erred in sustaining the Appellee's separate demurrers to Paragraphs I, II, and III of Appellant's complaint as amended by interlineation."

It is conceded that the demurrer to Paragraph III of the complaint, as amended by interlineation, was properly sustained, and we need not consider the questions raised in connection therewith.

*First:* The portions of appellant's complaint referred to in assigned error No. 1 consisted of photographs attached as exhibits to the complaint and a sentence referring to each of them. These photographs purported to show the physical condition of appellant's face after the accident. On motion of appellee these photographs and the sentences referring thereto were stricken from the complaint.

Appellant asserts that such photographs were proper parts of the complaint and their inclusion was a proper method of pleading the injuries sustained. Although the law on this issue seems to be well-settled against appellant, it is unnecessary for us to consider the question because after the motion

to strike was sustained appellant, by written motion, amended her complaint by deleting both the exhibits (photographs) and the language referring thereto. The issues here are presented upon the complaint, as amended. Under such circumstances any error in rulings on pleadings addressed to the original complaint only are waived. *Noble Co. Council etc., et al.* v. *State ex rel. Fifer* (1955), 234 Ind. 172, 176, 125 N. E. 2d 709; *Kimble* v. *Jolly* (1940), 217 Ind. 698, 700, 30 N. E. 2d 463.

*Second:* Appellant contends that Paragraph I of the complaint, as amended, is founded upon two theories (1) that the defendant-appellee was negligent in failing to provide warnings, signals, lights, reflective or other devices sufficient to notify passengers of the presence of the freight cars on the track; and (2) that the alleged custom of having "an employee with a lantern or flare" at the crossing constituted an invitation to the public to cross the railroad tracks at the intersection, and defendant-appellee was negligent in failing to have a flagman at the crossing at the time of the accident.

Rhetorical Paragraph I in parts relevant to the issues presented is set out hereinafter *verbatim* as follows:

"4. That at the point of intersection of said railroad tracks with said highway, the only warning thereof was a wooden cross-arm warning sign, which was nonilluminated and dirty.

"5. That as the highway approached the intersection from the northwest going southeast, it dipped sharply downgrade to a level with defendant's tracks.

"6. That it was the custom prior to said date for defendant to have an employee with a lantern or flare at said intersection to warn of the coming or existence of any train upon said tracks, which custom was known to Donald J. Joest hereinafter mentioned.

"7. That said highway at its point of intersection with said railroad tracks was a heavily traveled, state, federal and interstate highway.

"8. That at said time and place defendant by and through its agents, servants, and employees, whose names are unknown to this plaintiff, had a cut of freight cars standing on said tracks without lights, without any reflective devices, or any other device or thing to warn travelers of the existence of said railroad cars upon said tracks.

"9. That at the same time and place, darkness had fallen and there was no illumination upon said intersection, nor could the presence of said train at said intersection be discerned except by the headlights of oncoming automobiles, which headlights, because of the dip in the highway, would not shine upon said intersection until the automobile to which they were affixed approached within forty feet of said intersection.

. . . . .

"11. That as the automobile in which plaintiff was a passenger approached said intersection, the train of defendant railroad could not be seen because of the dip of the road and because of the negligent failure of the defendant to have any warnings or signals sufficient to notify travelers of the presence of said freight cars upon said tracks.

"12. That as the driver of the automobile in which plaintiff was a passenger approached said intersection, he saw no warning signals of any kind and believing the way was clear due to the absence thereof he failed to come to a stop in sufficient time to avoid striking said freight cars upon said tracks."

We shall first consider appellant's second theory of rhetorical Paragraph I pertaining to the alleged custom of maintaining a watchman at the crossing. In our judgment the only allegations in the complaint, as amended, which in any way support this theory of appellant's action are to be found in numerical para-

graph six where it alleged that it was the custom, prior to the date of the accident, to have an employee with a lantern or flare at the intersection to warn of the presence of a train upon the tracks, and that this custom was known by the driver of the car.

We reaffirm the rule as stated in *Gillies, by next friend* v. *N. Y. C. R. R. Co.* (1954), 124 Ind. App. 382, 388, 116 N. E. 2d 555, and here relied upon by appellant, as follows:

"The general rule with regard to the duty of a railroad which installs signals, etc., at its crossing, has been stated in Vol. 75, p. 61, §792, C. J. S., as follows:

" 'Where a railroad company maintains a flagman, gates, or other signals or warnings at a railroad crossing, whether voluntary or as required by law, the general public has a right to presume that these safeguards will be reasonably maintained, attended and operated and, in the absence of knowledge to the contrary, the fact that the gates are not open or the automatic bells or lights are not signalling, or the flagman is absent from his post, or if present, is not giving a warning of danger, is some indication or assurance of safety, and an implied invitation to cross on which a traveler familiar with the crossing may rely and act within reasonable limits on the presumption that it is safe for him to go on the crossing.' "

However, in order to withstand appellee's demurrer the complaint must allege facts which bring appellant within this rule.

In order to establish negligence in the violation of the alleged established custom in the present case, it would be necessary for appellant to show the existence of the custom, knowledge thereof and reliance thereon by the driver of the automobile involved, appellee's negligent failure to observe the

custom, and a direct causal connection between such failure and the collision involved. *Scott* v. *Missouri Pac. R. Co.* (1933), 333 Mo. 374, 62 S. W. 2d 834, 839, 24 A. L. R. 2d 1166, Anno. Cf.: *Smith* v. *The Wabash Railroad Company* (1895), 141 Ind. 92, 40 N. E. 270; *Gillies, by next friend* v. *N. Y. C. R. R. Co. supra* (1954), 124 Ind. App. 382, 116 N. E. 2d 555.

It seems to us that if the foregoing are essential elements of proof in order for appellant here to recover, such elements must be properly alleged in the complaint, and the absence of any one of them would be sufficient ground for the sustaining of a proper demurrer.

There is no allegation that the alleged customary flagman was absent from his post and not on duty at the time of the accident, nor is there, in our judgment, any facts alleged which would support such an inference. Neither is there any allegation that the alleged flagman was present at his usual post of duty and failed to give a warning of the presence of the cars upon the crossing. Nor do we believe that such fact might be inferred from the allegations in rhetorical Paragraph I. There is also no allegation that the driver of the automobile was familiar with the crossing or that he relied upon the fact that no flagman was on duty with a lantern or flare to indicate to him that there was no train approaching or on the crossing; that because of the absence of such flagman he [the driver] presumed that it was safe for him to proceed over the crossing; and that he relied and acted upon such presumption thereby causing his automobile to collide with the freight cars standing on the track at the crossing.

Considering that none of the foregoing facts are alleged in the complaint, as amended, we are forced to

conclude that appellant has not stated facts sufficient to bring them within the rule as reaffirmed in the Gillies case and hereinabove quoted.

Failure to observe the alleged custom could not be the proximate cause of appellant's injuries unless the driver of the car had knowledge of the custom, and relied upon the implied invitation created by appellee's alleged failure to observe such custom. Without reliance upon a custom and action by someone upon such reliance, there can be no causal connection between the failure to observe a custom and any injuries arising out of such failure.

In the present case there are, in our judgment, no facts alleged which show a causal connection between the alleged custom of having a flagman on duty to warn travelers of the presence of a train or railroad cars and the injuries of which appellant complains, that a jury might find was the proximate cause of her injuries. See: *Carmichael* v. *B. & O. R. Co.* (1951), 121 Ind. App. 463, 468, 98 N. E. 2d 698; *Gillies, by next friend* v. *N. Y. C. R. R. Co., supra* (1954), 124 Ind. App. 382, 388, 116 N. E. 2d 555; *Scott* v. *Missouri Pac. R. Co., supra* (1933), 333 Mo. 374, 62 S. W. 2d 834, 839, 24 A. L. R. 2d 1166, Anno.

It is alleged in numerical Paragraph 15 of rhetorical Paragraph I that plaintiff-appellant's injuries were proximately caused by the "negligence and carelessness of the defendant [appellee] as above set forth." What are the acts of negligence and carelessness "above set forth?"

1. That at the time and place of the accident defendant-appellee "had a cut of freight cars standing on said tracks without lights, without any reflective devices, or any other device or thing to warn travelers of the existence of said railroad cars upon said tracks."

2. That there "was no illumination upon said intersection."

3. That as the automobile approached the intersection the train could not be seen "because of the dip of the road and because of the negligent failure of the defendant to have any warnings or signals sufficient to notify travelers of the presence of said freight cars upon said tracks."

4. That as the driver of the automobile approached the crossing "he saw no warning signals of any kind."

Under such allegations there was no obligation or duty upon appellee to maintain any warning signals, lights, reflective or other devices to warn travelers of the presence of the freight cars upon the tracks at the crossing.

*Third:* Rhetorical Paragraph II of the complaint states substantially the same facts as alleged in Paragraph I except the allegation of an established custom of maintaining a watchman is not repeated.

However, the second paragraph more particularly alleges that the crossing was of "an extra-hazardous character" because the tracks were located in a deep gorge, the banks of which were approximately 30 feet in height and extended within a few feet of the intersection with the highway; that in addition to the dip in the highway which was described in Paragraph I there was a curve in the highway to the right as a motorist approached the crossing, and that as a result of this curve the headlights from an approaching automobile were thrown off the road to the left and "did not shine upon the approach of the tracks to the crossing" because of the gorge.

This paragraph of the complaint further alleges that the defendant-appellee failed to have any "warnings or signals" sufficient to notify travelers of the "presence

of said freight cars" standing on the tracks, and that the injury and damage to plaintiff-appellant was proximately caused by such "negligence and carelessness of defendant."

Does rhetorical Paragraph II of the complaint herein, as amended, allege any duty imposed by law upon appellee to maintain a watchman, signals or other devices at the intersection here involved to warn travelers of the approach of a train or the presence of a "cut of cars" "standing" upon the railroad tracks at the intersection?

> "Negligence cannot be predicated alone upon the failure of a railroad company to erect and maintain safeguards at a public highway crossing unless such are required by statute or by the public service commission or other duly constituted authority." *Pennsylvania R. R. Co.* v. *Sherron* (1952), 230 Ind. 610, 615, 105 N. E. 2d 334.

We reaffirm the rule as stated in *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, at pages 386, 387, 132 N. E. 740, as follows:

> "The failure to provide a bell or watchman at a highway crossing in the country to warn travelers could only be actionable negligence if it violated some duty imposed by law on the railroad company. And no positive duty to install such warnings is imposed by the law of Indiana, except where an order to that effect has been made by the Public Service Commission (See, §§5261a-5261d, Burns' Supp. 1918, Acts 1915, p. 105) or other proper authority.

> "At common law the fact that there was no electric bell or watchman might be shown, as a circumstance attending the operation of the car, from which to determine, in connection with the amount of travel habitually passing over the crossing and all other circumstances, whether or not the operation of the car in the manner and

at the speed that it was operated was negligent. But a duty to run a car with care in view of the fact that there are no special warnings at the crossing is not the same as a duty to provide and maintain a bell or watchman no matter how the car is run. There is no duty under the common law to place a bell, watchman, or other special warning, at a highway crossing in the country." (Citing authorities.)

This rule was again affirmed in *Lake Erie, etc., R. Co.* v. *Johnson* (1922), 191 Ind. 479, 483, 133 N. E. 732; *Pennsylvania R. R. Co.* v. *Sherron, supra* (1952), 230 Ind. 610, 615, 105 N. E. 2d 334; and *Constantine* v. *Pennsylvania R. Co.* (1940), 7 Cir., 114 F. 2d 271, 276.

" 'Whenever a railroad crossing is for any reason particularly dangerous, it *is not* a question for the jury to decide whether or not a railroad company should provide signalling and safety devices at any particular crossing, but the jury may consider the fact that there were no devices or watchmen together with all the other circumstances surrounding the crossing such as the near situation of houses, trees, vegetation and the like, and the frequency with which travelers pass over the crossing in order to determine whether or not *the operation of the car* in the manner and at the speed that it was operated was negligent. *T. H. I. & E. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740.' (Emphasis supplied.) To the same effect see *Pennsylvania R. Co.* v. *Sargent, Admrx.* (1948), 119 Ind. App. 195, 83 N. E. 2d 793." *Pennsylvania R. R. Co.* v. *Sherron, supra* (1952), 230 Ind. 610, 618, 105 N. E. 2d 334.

The question of determining when a grade crossing in Indiana becomes extra-hazardous or dangerous and of such a character that the safety of the users of the highway requires additional warning signals other than the regular highway crossing signs, is not within the province of the jury.

*Watson* v. *Brady* (1933), 205 Ind. 1, 12, 13, 185 N. E. 516; *Pennsylvania R. R. Co.* v. *Sherron, supra.*

The statute[1] conferring upon railroads the authority to construct their roads over a public highway does not require them to construct crossings that will be safe under any and all circumstances, and they are not obligated to anticipate and guard against extraordinary circumstances and dangers unless required to do so by some statute, or rule or regulation of the Public Service Commission or other proper body; *Cincinnati, Indianapolis, St. Louis and Chicago R'y Co.* v. *Long, Adm'r* (1887), 112 Ind. 166, 173, 174, 13 N. E. 659; *New York Central R. R. Co.* v. *Sholl et al.* (1957), 128 Ind. App. 134, 141, 146 N. E. 2d 565; but are obligated only to construct and maintain crossings so they will be reasonably safe for travel. *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 401, 97 N. E. 822.

There is no allegation in the complaint herein, as amended, that there was, at the time of the collision, any order of the Public Service Commission, or other proper body, requiring appellee to provide a watchman or other additional means of warning travelers using the highway that a train or "cut of freight cars" was occupying the crossing here involved.

For the reasons above stated appellant cannot recover under the allegations of her complaint, as amended, pertaining to the alleged failure of appellee to provide warning signals in addition to those required by Acts 1913, ch. 242, §1, p. 676, being §55-2001, Burns' 1951 Replacement.

*Fourth: Budkiewicz* v. *Elgin, Joliet and Eastern Ry. Co.* (1958), 238 Ind. 535, 150 N. E. 2d 897, is relied

---

1. Acts 1911, ch. 82, §1, p. 136, being §55-601, Burns' 1951 Replacement.

upon here to support appellant's charge of negligence consisting of having "a cut of freight cars *standing* on said tracks without lights . . . or any other device or thing to warn travelers. . . ." (Our italics.)

It is stated in the opinion of the Appellate Court, in *Tyler* v. *Chicago & Eastern Illinois Railway* (1959), 163 N. E. 2d 122, at page 127, *supra*, that,

> "To leave the cars 'standing' as an obstruction in the highway, as is alleged, is a violation of the statute, and negligence, per se."

The majority opinion in the Budkiewicz case held that the complaint which charged the defendant with placing "a black tank car across" the highway at the crossing, and leaving such car "standing" on the crossing, "charged more than a momentary stopping, or blocking of the highway for a reasonable time" thus charging a violation of Acts 1905, ch. 169, §666, p. 584, being §10-3904, Burns' 1956 Replacement. It was true in that case, as in the one now at bar, that no motion was filed to require the complaint to be made more specific on this point, and under such circumstances the complaint is liberally construed to sustain its validity. It is also the rule that a "demurrer admits not only the facts directly and specifically alleged in the complaint but also all facts that can be implied from other allegations by reasonable and fair intendment." *Lincoln Operating Co.* v. *Gillis* (1953), 232 Ind. 551, 558, 114 N. E. 2d 873.

However, a liberal construction of a complaint does not justify a disregard of the clear legislative intent, or authorize courts to amend a statute by judicial decree.

> "The legislature has given to the railroad companies the right to construct their roads upon or

across any public highway. See §12948, Burns'
1926. Certain duties are required of a railroad
when its tracks cross any street, avenue or alley
in any incorporated town. The right so conferred
necessarily implies that the railroad company is
authorized to operate its locomotives, engines,
trains and cars on the tracks on and over such
crossings, subject to such regulations as prescribed
by the legislature, and with due regard for [the
rights of] others." *C. C. C. & St. L. Ry. Co.* v.
*Gillespie* (1933), 96 Ind. App. 535, 547, 173 N. E.
708.

The Legislature has imposed certain regulations rela-
tive to permitting a train or cars to remain standing
on a railroad crossing by the enactment of §10-3904,
*supra,* as follows:

"Whoever, being a conductor or other person
having charge of, or running a railroad train, car-
rying, or used for carrying, freight, permits or
suffers the same or any car or locomotive engine
composing the same to *remain standing* across any
public highway, street, alley or farm crossing, . . ."
(Our italics.)

The purpose of this statute is to keep the highways
open, and not to prevent collision with railroad cars
necessarily obstructing the highway for a rea-
sonable time, *Pennsylvania Railroad Co.* v.
*Huss* (1933), 96 Ind. App. 71, 77, 180 N. E. 919;
and it must be reasonably construed and effect given
to it so that the railroad will not be deprived of the use
of its tracks. *Probert* v. *Chicago I. & L. Ry. Co.* (1937),
7 Cir., 93 F. 2d 259, 262.

An allegation such as is contained in the complaint
herein, as amended, that defendant-appellee, through
its agents, "had a cut of freight cars standing
on" the tracks at the crossing without lights or
reflecting devices or other means of warning

travelers of the existence of the cars, is not sufficient to charge a violation of §10-3904, *supra. C. C. C. & St. L. Ry. Co. v. Gillespie, supra* (1933), 96 Ind. App. 535, 541, 542, 173 N. E. 708; *Cleveland, etc. R. Co.* v. *Tauer* (1911), 176 Ind. 621, 96 N. E. 758, 39 L. R. A. (N. S.) 20; *Cleveland, Columbus, Cincinnati and Indianapolis R. W. Co.* v. *Wynant* (1885), 100 Ind. 160.

In Indiana the common law rule of negligence has not been applied to trains or railroad cars which are already occupying crossings when vehicles traveling upon a highway approach such crossing; *Carmichael* v. *B. & O. R. Co., supra* (1951), 121 Ind. App. 463, 98 N. E. 2d 698; *Morley* v. *C. C. C. & St. L. R. R. Co.* (1935), 100 Ind. App. 515, 524, 525, 194 N. E. 806; *Pennsylvania Railroad Co.* v. *Huss, supra* (1933), 96 Ind. App. 71, 78, 180 N. E. 919; *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 468, 14 N. E. 2d 714; except under circumstances wherein, in addition to the mere color of the cars, the crossing was hazardous in itself, the cars had been standing for an unreasonable period of time, or the railroad created a situation which erroneously induced the person traveling upon the highway to believe that he could traverse the crossing with safety. See: *Louisville & N. R. Co.* v. *Revlett* (1946), 224 Ind. 313, 322, 65 N. E. 2d 731; *New York, etc., R. Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762; *Gillies, by next friend* v. *N. Y. C. R. R. Co., supra* (1954), 124 Ind. App. 382, 387, 116 N. E. 2d 555; *Vandalia R. Co.* v. *Baker* (1912), 50 Ind. App. 184, 97 N. E. 16. No reason has been advanced by appellant to cause us to change this rule which has been followed in Indiana for so many years; and the allegations of the complaint, as amended, are not sufficient to bring appellant within the exception mentioned.

A potent reason for reaffirming such rule and applying it to the facts as alleged in the complaint herein, as amended, is ably stated in *New York Central R. R. Co.* v. *Casey, supra* (1938), 214 Ind. 464, 471, 14 N. E. 2d 714, as follows:

"It is a matter of common knowledge that highways in Indiana are frequently intersected by railroads upon which long trains may stand or move. The state provides the crossing signs at the side of the road where other travel signs are maintained as a notice and direction to the drivers of automobiles. . . . Those who use the highways must take notice of such signs, and so regulate their speed that they may look and see for themselves whether a train is occupying a crossing ahead of them, . . .

. . . . .

"It may be true that many automobiles are driven into the sides of trains, but it has yet to be demonstrated that automobiles driven in a reasonably prudent manner are driven into the sides of trains upon crossings, and that such conduct is so usual and probable as to be reasonably anticipated. . . . Railroads are not insurers of the safety of motorists approaching their tracks."

Appellant seeks to apply the rule that,

"A railroad company at common law is under a duty, in the operation of its trains over highway crossings, of using reasonable and ordinary care to avoid injury to travelers at and on highways which are intersected by its tracks." *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 455, 95 N. E. 1109, 42 L. R. A. (N. S.) 367.

However, in our judgment this rule has no application to the facts alleged in the present case.

As stated by Judge Achor in the dissenting opinion in the Budkiewicz case (238 Ind. 535, at page 551, 150 N. E. 2d 897, *supra*),

"[T]he statute [10-3904] is expressly made to apply to circumstances where railroad cars are per-

mitted to 'remain standing' on crossings as contrasted with those which temporarily stand upon crossings in the current operation of the cars."

"Standing" as used in the statute here means that the train has come to a stop and is at a standstill. 58 C. J., Stand, §4(b), p. 1316; 81 C. J. S., Stand, p. 846.

The word "remain" which qualifies the word "standing" in the phrase "remain standing" as used in the statute is defined in Webster's New International Dictionary, 2d Ed., p. 2106, as "to be left after a number or quantity has been subtracted or cut off—to stay behind while others withdraw." It is used in the phrase here under consideration in the sense of continuing or staying in the same place.

To "remain standing across any public highway" as used in the statute here does not mean momentarily or for a reasonable period of time required for the necessary normal operation of the train; *Peoples* v. *Fulk* (1942), 220 N. C. 635, 18 S. E. 2d 147, 148; but "it means that such standing shall continue or remain long enough to become an obstruction and prevent the free enjoyment of the highway by the citizens of the State, who may have occasion to use the same." *The State* v. *Malone* (1893), 8 Ind. App. 8, 10, 35 N. E. 198. See also: *Pennsylvania Railroad Co.* v. *Huss, supra* (1933), 96 Ind. App. 71, 79, 180 N. E. 919; 24 I. L. E., Railroads, §135, p. 254.

It is asserted here that the Budkiewicz case imposes the same rule of liability for railroads as is applied in cases where motorists create dangerous conditions upon the public highways. There are many reasons why the same rules of common law negligence which are applied in motor vehicle cases should not be applied to railroads. Some of the more important ones being that railroads are required to acquire and maintain their own

right-of-ways, they are the arteries which carry the heavy commerce of our country, and are necessary to our national economy and national defense. The operation of railroads began after the development of much of the common law of negligence, and they are authorized to construct their roads upon or across any highway, under certain statutory regulations which provide for the safety of travelers using the highway.

Well-reasoned cases decided in this jurisdiction prior to the Budkiewicz case sustain the views above expressed.

The reasons for the rule as followed in Indiana since the enactment of §10-3904, *supra*, and prior to the Budkiewicz case are, in our judgment, as evident, sound and cogent today as they were when first enunciated, and so long as the reasons for the rule exist it should not be disturbed.

We think the ruling in the Budkiewicz case was in error and insofar as it purports to hold that a bare allegation that a train is "placed across a crossing" or "standing" on a crossing is sufficient to allege actionable negligence under §10-3904, *supra*, it is hereby overruled; and insofar as such case purports to hold that the same rules of common law negligence as are applied in motor vehicle cases must be applied to railroads, it is also hereby overruled.

This court cannot say as a matter of law that the facts alleged in appellant's complaint, as amended, constitute negligence on the part of appellee *per se*, nor is it within our power to say as a matter of law that the crossing as pleaded herein was of such an extra-hazardous nature as to require the maintaining of a watchman or other additional means to notify travelers on the public highway that a train was occupying the crossing.

Three elements are essential to the existence ▇ of actionable negligence.

" '1. The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; 2. A failure by the defendant to perform that duty; and, 3. An injury to the plaintiff from such failure of the defendant.

" 'When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient.' " *Elder, Receiver* v. *Rutledge, Admx.* (1940), 217 Ind. 459, 464, 27 N. E. 2d 358.

It is our judgment that under the allegations of the complaint, as amended, there was no legal duty on the part of appellee to protect appellant from injury by providing additional means at the crossing involved to warn her, or the driver of the car in which she was a non-paying passenger, of the presence of a "cut of cars" on the crossing. Nor does the complaint, as amended, state facts sufficient to show a causal connection between the alleged negligent failure of appellee to maintain the alleged established custom of maintaining a flagman at the crossing, and appellant's alleged injuries, which might reasonably be found to be the proximate cause of such injuries. Under the law as it presently exists in this jurisdiction, appellant's complaint, as amended, does not state facts sufficient to constitute a cause of action against appellee and the demurrer thereto was properly sustained.

The result of the separate opinions filed here requires that the judgment of the trial court sustaining defendant-appellee's separate demurrer to Paragraph I of plaintiff-appellant's complaint, as amended by interlineation, be reversed; the judgment of the trial court sustaining defendant-appellee's separate demurrers to

Paragraph II and Paragraph III of plaintiff-appellant's complaint, both as amended by interlineation, be affirmed; and that this action be remanded to the Warrick Circuit Court for trial on the issue of established custom as presented by Paragraph I.

The judgment of the trial court sustaining defendant-appellee's separate demurrers to Paragraph II and Paragraph III of plaintiff-appellant's complaint, as amended, is affirmed; and the judgment sustaining the separate demurrer to Paragraph I of the complaint, as amended, is reversed with instructions for further proceedings on the issue of established custom consistent with this opinion.

Judgment reversed in part and affirmed in part.

Jackson, J., concurs.

Achor, J., concurs in part and dissents in part, with opinion.

Arterburn, J., dissents with opinion.

Landis, J., dissents for the reasons given in the majority opinion of this Court, written by Emmert, J., in *Budkiewicz* v. *Elgin, Joliet and Eastern Ry. Co.* (1958), 238 Ind. 535, 150 N. E. 2d 897.

## SEPARATE OPINION

ACHOR, J.—Appellant was riding as a guest in an automobile which collided with one of appellee's trains which was standing upon a crossing. Appellant's complaint was in two paragraphs. Separate demurrers were filed to each paragraph of complaint and each was sustained by the court. Appellant refused to plead further. The sustaining of the demurrer is presented to this court as cause for appeal.

The first paragraph of complaint alleges and proceeds upon the theory that prior to the particular collision it was appellee's custom to have a flagman with

a lantern or a flare at the intersection when trains were approaching or standing upon the intersection; that the driver of the automobile was familiar with this custom; that at the time he approached the intersection there was a section of one of appellee's trains standing on the intersection but there was no signal or sign of any kind being displayed by the railroad and that the driver of the car depending upon the established custom of the railroad proceeded across the intersection without stopping, believing that the railroad intersection was clear, and finally he alleged that the collision in which the appellant was injured was the proximate result of the negligence of the railroad company, as above alleged.

Although these allegations could have been stated by appellant more concisely and in greater detail, nevertheless it is my opinion that under the rules of law, recognized in the opinion of Bobbitt, C. J., in this case, and as stated by the Appellate Court in the case of *Gillies, by next friend* v. *N. Y. C. R. R. Co.* (1954), 124 Ind. App. 382, 116 N. E. 2d 555 (Transfer denied April 1, 1954), appellant has stated a cause of action in his first paragraph of complaint on the theory of established custom and a resulting entrapment, sufficient to withstand a demurrer.[1] Therefore, in my opinion the sustaining of the demurrer as to the first paragraph of complaint was reversible error and, for this reason, the cause must be remanded to the trial court, with instructions to set aside the judgment as to the first paragraph of complaint and to overrule the demurrer as to such first paragraph of complaint.

---

1. ". . . the demurrer admits not only the facts directly and specifically alleged in the complaint but also all facts that can be implied from other allegations by reasonable and fair intendment. . . ." *Lincoln Operating Company* v. *Gillis* (1953), 232 Ind. 551, 558, 114 N. E. 2d 873.

The second rhetorical paragraph of appellant's complaint (omitting the allegation regarding the custom of maintaining a watchman at the crossing) alleges that the appellee was negligent in that it had a cut of freight cars standing on the crossing; that the crossing was extra hazardous; that there were no lights, reflecting devices, or any other means of warning travelers of the existence of the cars on the crossing.

Appellant contends that this allegation of complaint is sufficient to constitute a charge of negligence within the terms of §10-3904, Burns' 1956 Repl. which makes it unlawful for a railroad to permit its trains to "remain standing" across any public highway, street, alley or farm crossing." The significance of this statute, as applicable to comparable facts, was considered in the case of *Budkiewicz* v. *Elgin, Joliet and Eastern Ry. Co.* (1958), 238 Ind. 535, 545, 547, 150 N. E. 2d 897.

As stated by Bobbitt, C. J., in the majority opinion of this case, and by Achor, J., in the minority opinion of the Budkiewicz case, *supra*, it seems apparent that the legislature, which enacted the law, intended that the term "remain standing" should not and could not apply to the temporary, reasonable and necessary standing of trains or portions thereof upon crossings in the course of their normal reasonable and necessary operation. In order that the standing of trains upon a crossing constitute an unlawful act, the term "remain standing," as used in the statute, *supra*, must be construed to mean that the condition prohibited continued for a period of such prolonged duration as to constitute an unwarranted obstruction and interference with the free enjoyment of the highways by the citizens of the state. It follows, as a necessary consequence of this construction that, in order to invoke the provisions of §10-3904, *supra*, as a basis of his course of action, appellant's

complaint must allege some facts essential to its application. The appellant's complaint in this case does not allege any such facts with regard to the reason for or the period of time during which appellee's train was upon the particular crossing, nor are facts alleged from which it can be inferred that the presence of appellee's train upon the track was in violation of the statute. I am therefore of the opinion that the complaint does not allege a meritorious cause of action within the terms of §10-3904, *supra*. Insofar as the opinion of the Budkiewicz case contains language to the contrary, I concur with the opinion of Bobbitt, C. J., that that case was in error and should be overruled.

Furthermore, appellant asserts that rhetorical paragraph II alleges facts sufficient to state a cause of action independent of the statutory provision of §10-3904, as applied to this case. In support of this contention, appellant asserts that because of the hazardous condition of the crossing it was the duty of the railroad company to provide protective signals or devices in addition to those required by statute, ordinance, custom or ruling of the public service commission. I do not believe this to be the law in Indiana. Upon this issue, I believe the law to be that as stated in the opinion of Bobbitt, C. J., in the present case, and as stated by Achor, J., in the dissenting opinion in the Budkiewicz case, *supra*. For the reasons which have been exhaustively considered in the opinions above cited, I am not in agreement with the concurring opinion of Arterburn, J., in the Budkiewicz case, which purports to construe the prevailing opinion in that case as placing the same responsibility on railroads to use due care in the operation of their trains as is placed upon motorists upon the highways.

For the reason stated immediately above, I concur in the opinion of Bobbitt, C. J., that the demurrer to the second paragraph of complaint was properly sustained and that, as to this respect of the judgment of the trial court, the same should be affirmed.

Arterburn, J., concurring in part and dissenting in part.

### DISSENTING AND CONCURRING IN PART

ARTERBURN, J.—I concur in that part of Judge Achor's opinion overruling the demurrer to the first paragraph of complaint and dissent to the portion sustaining the demurrer to the second paragraph of complaint. I dissent to the entire opinion of Judge Bobbitt which holds the demurrers should be sustained to both paragraphs of complaint.

The second paragraph of complaint in substance alleges that the plaintiff below, a minor, was injured when the motor car in which she was riding as a passenger collided with a "cut of freight cars" left standing on a highway crossing which was "extrahazardous" on a dark night, without any illumination, signal lights or flagman.

The legally significant facts in this case are the same as those in the case of *Budkiewicz* v. *Elgin, Joliet & Eastern Ry. Co.* (1958), 238 Ind. 535, 150 N. E. 2d 897. The Appellate Court decided the present case (163 N. E. 2d 122, pending on petition to transfer) on the precedent of the Budkiewicz case.

Judge Bobbitt's opinion in this case is a reversal of that case and is in substance the dissenting opinion to Judge Emmert's majority opinion in that case. The precedent of the Budkiewicz case should weigh sufficiently to control this case. A change in the member-

ship of the court should not change the law; otherwise we have a court of men rather than a court of law and precedent. The use of Appellate Court cases to over-rule this later Supreme Court case violates all rules of legal precedent. Trial courts, lawyers and litigants are entitled to certainty and stability in the law and to rely upon precedent in their work. Legal precedent requires that the law should not be left in uncertainty following elections.

In the Budkiewicz case we held that both the common law and the Statute (Burns' Ann. St., §10-3904) prohibit "a cut of cars" being left on a railroad crossing at a highway on a dark night, with nothing to make them visible to mortorists. We said at page 907 of 150 N. E. 2d:

"The method (and speed) of travel on the highways has changed considerably over the last fifty years. The acts which are required to exercise due care by railroads, as well as by travelers on the highway, have changed as travel has changed from the horse-drawn vehicles on gravel roads to the faster-moving motor car on smooth paved roads. Likewise the method and means of signaling and warning of danger has improved during the years by the perfection of various automatic devices, lights, flares, reflectors and luminous paints to the extent that such uses are now reasonable, where previously they were not practical.

"In this age, regardless of any statute, it would be negligence at common law for anyone to leave a large, yet indistinguishable object on the traveled portion of a highway on a dark night (be it a motor vehicle or a railroad car), without warning other travelers of the deceptive condition. Whether or not such a condition existed as a result of an emergency and the injury occurred before the danger could be eliminated, is a matter of defense."

No new reasons are given for overruling the Budkiewicz case. The reasons are the same as those given

in the dissenting opinions at that time, which attempt an explanation of why railroad companies should be given preferential treatment in the field of negligence over the other transportation systems and the highway traveler.

One of the reasons given is that the same principles of common law negligence should not be applied to the operation of railroads as it is to the operation of motor vehicles because "their operation (railroads) began *after* the development of much of the common law of negligence." (Our italics.)

Negligence is based upon the duty to use care and it consists of failure to exercise that degree of care which a person of ordinary prudence would exercise under like circumstances. It is to be measured in the light of modern ways and means of life where danger can be reasonably anticipated and likewise reasonably avoided. *Wabash Railway Company* v. *McDaniels* (1882), 107 U. S. 454, 2 S. Ct. 932, 27 L. Ed. 605; *Southern Railway Company* v. *Harpe* (1944), 223 Ind. 124, 58 N. E. 2d 346; *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944; *E. Coast Lines* v. *M. & C. C. of Balto.* (1948), 190 Md. 256, 58 A. 2d 290, 2 A. L. R. 2d 386; *City of Radford* v. *Calhoun* (1935), 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378; Restatement, Torts, §298, (1934); 1 Shearman & Redfield, Negligence, §7 (1941).

Judge Bobbitt's opinion holds that a railroad company does not have the same common law duty to exercise the care imposed upon all other persons, including operators of motor vehicles. It also states that because of the importance of the railroads to national defense, they should be a favored class and exempt to some extent from the principles of common negligence. Such a situation has no relevancy to the question of negligence. Such concern is a matter for the legisla-

ture—not the judiciary. There are many industries, including the motor truck industry, which are important to our national defense and whose "operation began after the development of much of the common law of negligence." Accordingly, all such industries would be entitled to special exemptions from common law principles of negligence. We thus become a legislative rather than a judicial body.

As stated previously, the *statute* also prohibits the act alleged in this case, namely, permitting "a cut of freight cars" to stand on the crossing. The statute states:

> "Whoever, being a conductor or other person having charge of, or running a railroad train, carrying, or used for carrying, freight, permits or suffers the same or any car or locomotive engine composing the same to remain standing across any public highway, street, alley or farm crossing, or who, whenever it becomes necessary to stop such train across any public highway, street, alley or farm crossing fails or neglects to leave a space of sixty [60] feet across such public highway, street, alley or farm crossing shall be fined . . ." Acts 1905, ch. 169, §666, p. 584, being §10-3904, Burns' 1956 Replacement, *supra*.

Judge Emmert in the Budkiewicz case said: (150 N. E. 2d 897, 900, 901)

> ". . . The statute was enacted for the benefit of the public using the highways, not only to keep traffic moving, but to protect travelers from this kind of an obstruction in the highway. See *Central Indiana R. Co.* v. *Wishard,* 1917, 186 Ind. 262, 272, 114 N. E. 970. A violation of this statute is negligence per se."

To me the language of the statute is plain. It was intended that a "cut of freight cars" should not be left standing on a highway crossing. The cars should be

separated by a space of 60 feet at the crossing instead. However, verbal gymnastics are indulged in, in attempting to exempt railroads from the application of such a statute. A great deal is made of the words "remain standing" in the law. To us there is nothing unusual about this phrase. The word "remain" itself means nothing more than "standing." Using them together adds nothing to the meaning. In this case, where a railroad has left "a cut of freight cars" standing across the highway on a dark night, there is certainly a violation of that statute. The cars had to "remain standing" after they were "cut" or detached from the train. As stated in Judge Bobbitt's opinion, "remain standing" as defined in Webster's New International Dictionary, 2d ed., means "to be left after a number or quantity has been subtracted or cut off—to stay behind while others withdraw."

A "cut of freight cars" could not be better defined. To me the ordinary and sensible meaning of the statute has been mutilated in order to make the railroads a favorite of the courts. The traveling public on the highway is the victim. The statute will no longer have any effective meaning.

There is a further allegation in this paragraph of complaint that the crossing was "extrahazardous" and the facts are set out showing such to be true. Judge Achor, in the case of *Gillies, By Next Friend* v. *N. Y. C. R. R. Co.* (1954), 124 Ind. App. 382, 116 N. E. 2d 555 there held in effect that where it was shown that the extrahazardous character of the crossing existed, even though no flasher signals had been ordered erected at such a place, a complaint based upon that condition would be sufficient. He stated (at pp. 387, 388):

"The law is well settled that railroads are under no positive common-law duty to maintain flagmen

at their crossings or to install a light, signal or warning of any kind to indicate that a train is occupying the same, *unless ordinary care would require that such action be taken because of the extrahazardous character of the crossing.* . . .

"It is not alleged that the intersection here involved was *extrahazardous* or that there was any rule or regulation by a properly constituted authority requiring that flagmen be stationed, or mechanical flashers be installed, at the intersection." (Our italics.)

To hold a railroad owes no duty to the public using an extrahazardous crossing until the Public Service Commission happens to find out about it after the accident and then holds a hearing and orders protective measures, as in this case, is not realistic.

To say that a railroad can be held to be negligent for the dangerous condition of its highway crossing only in event it violates a statute or order of a Public Service Commission is, in effect, exempting it from the common law rules of negligence that are applicable to all persons, including operators of motor vehicles. It is evident without citation of authorities that although motor vehicles have statutes and regulations which control their operation and a violation of which may be held to be negligence, still there are other acts not covered by statutes or regulations for which an operator of a motor vehicle may be held liable under the common law of negligence. I feel the same principle applies to all persons alike, including railroads. *Willett* v. *Baltimore & O. S. W. R. Co.* (1936), 284 Ill. App. 307, 1 N. E. 2d 748; *Tanzi* v. *N. Y. Cent. Rd. Co.* (1951), 155 Ohio St. 149, 98 N. E. 2d 39, 24 A. L. R. 2d 1151.

In *Wagner* v. *T. P. & W. R. R.* (1933), 352 Ill. 85, 90, 185 N. E. 236, 238, the Supreme Court of Illinois said with reference to the common law duty of a railroad:

"Defendant contends that it is not required to maintain warning signs at highway intersections except where specifically directed by the Commerce Commission, and that the record fails to show any order or direction of the commission relative to signs at the intersection where the accident occurred. . . . But regardless of the situation produced by the failure to prove an order of the commission, there is a common-law duty devolving upon railroads to exercise such care and use such precautions as will enable the traveler on the highway, if he exercises ordinary care, to ascertain in the nighttime the approach of a train over a street crossing such as the testimony shows this one to have been. Special conditions creating special hazards at crossings require a watchman, gates, or other warning to travelers. *Opp* v. *Pryor*, 294 Ill. 538, 128 N. E. 580." See also: *Bales* v. *Pennsylvania R. Co.* (1952), 347 Ill. App. 466, 107 N. E. 2d 179.

Both the common law and the statute of this state fix the liability of the railroad as alleged in the second paragraph of the complaint. We can find no valid *legal* reasoning why railroads should be exempt from principles of the law of negligence which applies to other transportation systems and the traveling public using the highways. Any person leaving a dark, obscure object across the traveled portion of the highways at night, whether it be a railroad company or a motorist, creates a well known hazard and if it is left unattended, without any illumination, in my opinion it is "intrinsically dangerous" and an act of negligence. *E. Coast Lines* v. *M. & C. C. of Balto.* (1948), 190 Md. 256, 58 A. 2d 290, 2 A. L. R. 2d 386; *City of Radford* v. *Calhoun* (1935), 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378; Restatement, Torts, §297 (1934). If such a condition results from an emergency, then it is a matter of defense and it is not necessary to negative or anticipate such an affirmative defense in the complaint, as stated in the

majority opinion. It is a new principle of law made especially for this case that a plaintiff must "allege facts with regard to the reason for the period of time during which appellee's train was upon the particular crossing." Such matters are within the peculiar knowledge of the railroad—not the injured party. They are matters of defense. We point out the criminal statute does not fix any length or period of time during which the cars may "remain standing" on the crossing. In fact, it grants the railroad *no time* for such standing, and instead says that the cars shall be broken at the crossing and "a space of sixty [60] feet across such highway shall be left." Yet the majority opinion states the plaintiff must "allege facts" showing the period of time during which the cars were left standing on the crossing was unreasonable.[1] This is adding something to the statute which is not in the statute.

The burden is on the railroad (as any ordinary defendant) to show it had an excuse for violating the law against blocking the highway (by a cut of freight cars on a dark night without lights or signals) and not breaking the cars with a space of at least sixty [60] feet at the crossing, as provided by the statute.

This is not a case such as those cited in the opinions of Judges Bobbitt and Achor, where a motorist hit railroad cars at the time *being moved across the highway* by an engine. This is a case where a cut of cars were left *standing* on an "extrahazardous" highway crossing at night, and as the facts state, they were obscure and difficult to see, with no signals or warning lights. Any reasonable person knows that such a blocking of the

---

1. Using the same rationale as that used in the majority opinion, one charged in a case of "overtime parking" could defend on the ground the statute or ordinance did not prohibit temporary or emergency parking and the complaint must allege all possible facts showing that parking ("the remain standing") was not an emergency or temporary condition.

highway is extremely dangerous in this day and age of motor traffic. Railroads may not insist upon operating their trains as they did one hundred years ago, when only horse-driven vehicles used crossings. Their conduct and the care used must be commensurate with modern methods of travel.

"In determining what is the duty, the failure in which constitutes negligence, regard is to be had to the growth of science, and the improvement in the arts, which take place from generation to generation.

"Many acts or omissions are now evidence of gross carelessness which a few years ago would not have been culpable at all, as many acts are now consistent with great care and skill which in a few years will be considered the height of imprudence." 1 Shearman & Redfield, Negligence, §7 (1941).

I cannot be a party to straining and stretching legal principles and a statute beyond logic and reason, to give railroads an advantage over ordinary litigants. We have said time over time that this court takes judicial notice of the improvements in the arts and sciences which have a bearing upon the litigation.

If railroads are to be made the favorites of the law in the face of both the statute and the common law, it should be done by the legislature and not by the courts. The traveling public is the loser and victim in this case. I feel transfer should be denied and Judge Bierly's opinion on behalf of the Appellate Court should be affirmed on the basis of precedent and the law in this state. The demurrer to the first and second paragraphs of complaint should be overruled by the trial court.

NOTE.—Reported in 173 N. E. 2d 314.